IN RE: ESTATE OF GEORGE E. MOODY.

(49 A2d 562)

May Term, 1946.

Present: MOULTON, C. J., SHERBURNE and STURTEVANT, JJ., and
BLACKMER and HUGHES, Supr. JJ.

Opinion filed October 1, 1946.

*Hunt & Hunt* for the petitioners.

*Finn & Monti* for the petitionees.

MOULTON, C. J. This is a petition originally brought to the Probate Court for the District of Washington, on December 7, 1943, by Stedman C. Wheeler, administrator d. b. n. c. t. a. of the estate of George E. Moody, deceased, Charles B. Adams, executor of the estate of Mark H. Moody, deceased, Ruth Moody and Marion Moody, alleging that on July 21, 1930, Wheeler's final account as such administrator was allowed by that court, and it was adjudged that an order and decree should pass settling the estate in accordance therewith, but that the court through error or mistake failed to embody the points decided in appropriate order or orders

officially evidencing the allowance of the account and the adjudication actually made; and praying that the matters so adjudicated might be embodied in appropriate entry or entries as of July 21, 1930, by a nunc pro tunc order, and for such other and further relief as to the court should seem meet. On hearing before the Probate Court the petition was granted, and an appeal was taken to the County Court by the petitionees, Ollie M. Perry, administratrix of the estate of Jennie S. Moody, the widow of George E. Moody, and Ollie M. Perry, personally, and Fontinelle Goodrich, Mrs. Moody's daughter by a previous marriage. Mrs. Moody and her two step daughters were beneficiaries under Mr. Moody's will.

In the County Court, after hearing the testimony on both sides, findings of fact were filed and a nunc pro tunc order was made in accordance with the prayer of the petition. The petitionees have brought the cause here on their exceptions.

From the findings of fact we are informed that George E. Moody died testate on November 6, 1921, and left surviving him a widow, Jennie S. Moody, a son by a former marriage, Mark H. Moody and two granddaughters Ruth Moody and Marion Moody. Jennie S. Moody had two daughters by a previous marriage, Olive N. Perry and Fontinelle Goodrich. Mark H. Moody died before the institution of the present proceeding, and Jennie S. Moody during its pendency. The will of George E. Moody, which was dated February 5, 1919, was admitted to Probate on December 5, 1921, and Mark H. Moody was, in accordance with its provisions, appointed executor of the estate. He duly qualified and acted as such executor until he resigned on March 26, 1928. On May 22, 1928, Stedman C. Wheeler was appointed administrator d. b. n. c. t. a.

The will made the following provision for the widow: "Second, I hereby give, devise and bequeath unto my beloved wife, Jennie S. Moody, the sum of Twelve Thousand Dollars, said amount to be in lieu of any rights by way of homestead, dower or other estate given her by law. I direct that said amount shall be paid to her by my executor by the giving to her of a note of Twelve Thousand Dollars, signed by my son, Mark H. Moody, said note to be written with interest annually at five percent, if money at that rate is not taxable; otherwise at six percent to be payable $1,000. on or before every year from its date and to be secured by a

mortgage on my Cobb Hill Farm in Moretown, which farm is bequeathed to my said Son in the residuary clause in this will." The will also bequeathed the sum of one thousand dollars each to Ruth Moody and Marion Moody and to Ollie M. Perry and Fontinelle Goodrich, these legacies to be payable by notes given in the same way as the note to the widow. Mark Moody was given all the residue of the estate.

The inventory and appraisal showed that the testator owned various parcels of real estate at the time of his death, and, on application dated December 20, 1922, and signed by Jennie S. Moody, a license to sell all of the real estate was granted by the Probate Court to Mark Moody as executor. The license was issued on January 16, 1923. On June 20, 1924, an additional inventory was filed showing a one half interest in certain other real estate, and a license was issued to sell this property, on application signed by Jennie S. Moody.

On April 18, 1923, Mrs. Moody applied to the Probate Court for support as widow. After hearing on April 27, at which she was present, with her attorney, the late Erwin M. Harvey, Esq., she was granted an order for $65. a month, and pursuant thereto she was paid by the executor in all the sum of $5070.00 during the pendency of the settlement of the estate until April 25, 1928. Mr. Harvey acted as her attorney during the administration of the estate by Mark Moody and by Stedman Wheeler.

After the resignation of Mark Moody his account was filed in the Probate Court. It was duly advertised and a full hearing had on January 7, 1929, at which he, Stedman Wheeler and Mrs. Moody appeared with their respective attorneys. The account showed that some of the real estate had been sold and that the rest was still in the estate. The account was allowed in part and disallowed in part. An item showing a payment of $345. to the widow as a part of her legacy was disallowed on the ground that it was premature since the solvency of the estate had not been determined. This sum, however, was kept by the widow and was never repaid to the estate. No appeal was taken from the rulings of the court as to the account.

On January 28, 1929, Stedman Wheeler obtained a license to sell all the remaining real estate for the purpose of paying the debts of the estate. This license included the right to sell "the

homestead interest of the widow therein, provided, however, that the sum of $1,000. be retained in the Administrator's hands in lieu of the said homestead right, the said $1,000. to be disposed of under further order of this court." In pursuance of the license Wheeler sold all the remaining real estate.

On June 6, 1930, the Probate Court issued an order of notice for the allowance of Wheeler's account as administrator d. b. n. c. t. a. The hearing was set for July 7. The account was duly advertised. On July 7 Wheeler appeared before the court, and Charles B. Adams, Esq., appeared as attorney for Mark Moody. The court found the account unsatisfactory in form and suggested that it should be tied in with the previous account of Mark Moody, as executor. The allowance of the account was held open for this purpose, and on July 21st it was again presented to the Court. It showed a balance of $1,000. in Wheeler's hands as proceeds of the sale of the homestead right of the widow, and also that Mark Moody had advanced in excess of $1,000. to the estate. The Probate Judge examined it, found it in proper shape, observed that Mark Moody had advanced money to make the estate solvent, and allowed the account. Wheeler paid a bill for the probate fees in the sum of $29. which covered the notice of settlement, settlement and record, decree and record, certified copy of the decree and notice to the bonding company, and received a receipt therefor. The items of the bill were copied into the records of the court, and record made of its payment. The receipt of the fees for settlement and decree were reported to the State Auditor. Wheeler paid proceeds of the sale of the homestead right to the widow. The findings state that: "From then on the estate rested in the mind of Judge Davis (the Judge of the Probate Court) as closed and completed and was so considered by him and by the Administrator Stedman C. Wheeler and by Charles B. Adams until just before the bringing of this proceeding."

After July 21, 1930, no further action in regard to the estate was taken by anyone until several months after the death of Mark Moody on April 27, 1943, when the law firm of Finn and Monti, who were then acting as attorneys for Mrs. Moody, discovered that no notation of allowance had been made on Wheeler's administration account. In November of that year Mrs. Moody petitioned the Probate Court for an extension of time in which to ac-

cept or waive the provisions of her husband's will. She died on March 3, 1944, and Ollie N. Perry was duly appointed and qualified as administratrix of her estate. After notice and hearing the court dismissed her petition on June 2, 1944, and no appeal was taken from this decree. At no time did Mrs. Moody waive the provisions made for her in the will.

The findings conclude thus: "From all the evidence we are convinced beyond all doubt and find that Judge Davis intended to allow and did allow the final account of Wheeler as Administrator of the George E. Moody Estate on July 21, 1930, but through inadvertence or mistake failed to make notation of the allowance of the account."

Before entering upon a consideration of the petitionees' exceptions it will be well to define the issues presented in this proceeding. No answer to the petition was filed, and consequently the matter stood upon a general denial of all the material allegations therein. The controlling issue of fact is whether the final administration account of Stedman Wheeler was actually, and upon proper notice allowed. Whether the account contained errors concerning which further examination ought to have been made by the Probate Court is beside the point. The other issue is whether, under the circumstances, the entry of the nunc pro tunc order was an abuse of the court's discretion.

The very numerous exceptions briefed relate to the findings as made, to the refusal of the court to comply with requests for findings, to the admission and exclusion of evidence, to the denial of the petitionee's motion, made after the close of the evidence, to withdraw their rest for the purpose of introducing further evidence, and to the judgment.

A Probate Court has the inherent power to correct its decree by a nunc pro tunc order so that it will accord with the decision rendered and speak the truth. *In re Estate of Prouty,* 105 Vt 66, 72, 163 A 566. It is the same discretionary power that all courts of record possess, independent of statute. See, *Cootey* v. *Remington,* 108 Vt 441, 445, 189 A 151; *Vermont Evaporator Co.* v. *Taft,* 108 Vt 209, 211, 184 A 704; *St. Pierre* v. *Beauregard,* 103 Vt 258, 261, 152 A 914; *Mosseaux* v. *Brigham,* 19 Vt 457, 460. Here there is no decree to be corrected, but the authority of the court extends to the direction of the entry of a decree previously

rendered the record of which has been omitted through inadvertence or mistake. *In re Peters' Estate,* 175 Okla 90, 51 P2d 272, 274-5; *Woodmansee* v. *Woodmansee,* 137 Okla 112, 278 P 278, 280; *Dickenson County* v. *West Dante Supply Co.,* 145 Va 513, 134 SE 552, 553. Of course what a Probate Court may do in this regard may be done by the County Court sitting on appeal as a higher Court of Probate with coextensive jurisdiction. *Everett* v. *Wing,* 103 Vt 488, 493, 156 A 393 and cas. cit; *Valiquette* v. *Smith,* 108 Vt 121, 126, 183 A 483; *Roddy* v. *Fitzgerald Estate,* 113 Vt 472, 476, 35 A2d 668; *Haskins* v. *Haskins Est.,* 113 Vt 466, 468, 35 A2d 662. But the issuance of a nunc pro tunc order, either to correct an inaccurate record or to direct an entry where the record has been omitted through inadvertence or mistake, should be done with great caution and only where the error or omission has been proved beyond all doubt. *In re Estate of Prouty,* 105 Vt 66, 73, 163 A 566, and cas. cit. And even so, whether a nunc pro tunc order should be made depends upon the circumstances of the particular case, and it should be granted or refused as the justice of the cause may require. *Noyes* v. *Pierce,* 97 Vt 188, 196, 122 A 896; *Mitchell* v. *Overman,* 103 US 62, 64, 26 L ed 369, 370; *Borer* v. *Chapman,* 119 US 587, 7 S Ct 342, 30 L ed 532, 536. The mistake must be shown to be attributable, not to the laches or fault of the parties, but to the court, so that the maxim "Actus Curiae neminem gravabit" is applicable. *Mitchell* v. *Overman, supra; Vermont Evaporator Co.* v. *Taft, supra.*

An exception was taken to the finding that on January 7, 1929, a full hearing was had on the administration account of Mark Moody. The objection appears to be to the characterization of the hearing as "full." It is argued that the amount of the encumbered and unencumbered real estate and the value of it was not disclosed to the court at the time, and for that reason a "full" hearing could not have taken place, and therefore, that the proceedings had no force in law. All that is necessary to say as to this claim is that Mrs. Moody attended the hearing with her attorney, and nothing appears to show that an ample opportunity was not afforded them to obtain all the information they desired concerning the assets in the hands of the executor and his administration of them. Furthermore, since no appeal was taken from the decision of the Probate Court, it is to be assumed that they were satisfied. It is altogether

too late now to raise any question as to Mark Moody's account. The exception is not sustained.

The remaining three exceptions to the findings may be considered together, since essentially the same question is raised by each of them. The first of these findings is that at the hearing on July 21, 1930, the Probate Judge examined Stedman Wheeler's administration account and found it in proper shape. The second is that from that day the estate rested in the judge's mind as closed and completed and was so considered by him. The third is that from all the evidence the trial court are convinced beyond all doubt and find that the Probate Judge intended to allow and did allow Wheeler's account as administrator of the estate of George E. Moody on July 21, 1930, but through inadvertence or mistake failed to make notation of its allowance. The petitionees' argument, which is more or less applicable to all their exceptions, runs as follows: the account could not have been in proper shape, and the judge could not have considered the estate closed, because no written record was made to that effect, because no notice of the hearings of July 7, and July 21 was given to Mrs. Moody's attorney, as provided in the rules of the Probate Court, and because certain circumstances were shown by the evidence which are claimed to be inconsistent with the findings. As to the specific finding that the account was allowed, but through inadvertence or mistake was not recorded, it is insisted that there is no substantial evidence to support it.

All of these questions are questions of fact. In determining whether there has been an error in a judicial record or whether the record of a judgment or decree which has actually been made has been omitted through mistake any legitimate evidence may be admitted, which evidence may include the recollection of the judge who rendered the judgment. However it may be elsewhere it is not our rule that record evidence of the proceedings is essential to justify the making of a nunc pro tunc entry. *In re Estate of Prouty,* 105 Vt 66, 74, 163 A 566. Tested by this rule it is clear that these exceptions are unavailing. The fault that the Probate Judge found with Wheeler's account when it was first presented on July 7, 1930, was merely as to its form, and after its correction in this respect, he was satisfied with it. This appears by his own testimony, as well as by the testimony of Mark Moody's attorney, who

was present at the time. The belief and understanding of the judge that the account had been allowed is also supported by his testimony. The facts that no entry was made and no notice of the hearings given otherwise than the statutory notice by publication are immaterial so far as these findings are concerned. And the evidence, to which the petitionees refer, that at a later date there was a conference between Wheeler's attorney and the judge concerning a decree in the estate does not compel the trial court to find otherwise than as it did.

What has just been said applies to the exception to the third finding above mentioned. There were, no doubt, inconsistencies and considerable vagueness of memory shown in the testimony of the witnesses. The hearing on the account had taken place fifteen years previous to the time of the trial in County Court. Up to two years before that everyone had supposed that the estate was closed. The judge of Probate had retired from office. But he testified, as we have seen, that the account had been allowed, and he was corroborated in this by Stedman Wheeler and by Judge Charles B. Adams, at that time attorney for Wheeler, and by the facts that the fees due upon the closing of the estate had been paid, receipted for, entered as paid in records kept by the Registrar of Probate for them, and accounted for to the Auditor of Accounts. It is unnecessary to cite authority for the well recognized principle that the weight to be given the evidence, the conflicts and inconsistencies therein, and the fair and reasonable inferences to be drawn therefrom are for the trier of facts to decide. It cannot be said in this instance that there was no substantial evidence to support the findings, or that the trial court, upon the consideration of it, was not warranted in being convinced beyond all doubt. *State* v. *Pierce,* 103 Vt 383, 387, 154 A 675; *United States* v. *Cohen,* 145 F2d 82, 86.

■■ The petitionees filed forty-five requests for findings of fact, and took thirty-six exceptions, of which thirty-three are briefed, to the refusal of the trial court to comply with them. It would prolong this opinion to an unprofitable extent were we to treat these exceptions separately. Some of the requests are merely conclusions of law and would have been without force, if complied with. *Phillips* v. *Plastridge,* 107 Vt 267, 271, 179 A 157, 99 ALR 1074. Others relate to matters concerning the administration of the George E. Moody estate, and to the contents of Stedman

Wheeler's account, which are immaterial to the issues before us. *Crampton* v. *Lamonda*, 95 Vt 160, 164, 114 A 42. Still others were substantially complied with in the findings as made. In some instances the evidence was conflicting, and so the court was not bound to find as requested. As to the request to find and state the rule of the Probate Court concerning notice to attorneys for the parties in interest, all that need be said at this time is that these rules of court having been adopted under the authority of statute (Acts 1925, No. 49; P. L. 1244) have the force of law. *Davis* v. *Dunn*, 90 Vt 253, 256, 98 A 81, Ann Cas 1918 D, 994, and are to be judicially noticed by the Probate Court and by the County Court sitting as a higher court of Probate. *Black* v. *Parham*, 101 Ind App 416, 199 NE 472, 473; *Cramer* v. *Illinois Commercial Men's Association*, 260 Ill 516, 103 NE 459, 462. And on appellate proceedings before us such notice can also be taken. *Tischner* v. *Rutledge*, 35 Wash 285, 288, 77 P 388; *American Legion Post etc.* v. *First Nat. Bank and Trust Co. etc.*, 113 F2nd 868, 872. See also American Law Institute's Model Code of Evidence, Rules 801 and 806(3). The bearing of Probate Court rules upon the present controversy will be considered later on.

The petitionees have briefed fifteen exceptions to the admission and exclusion of evidence. We do not find it necessary to consider them one by one. All have received our attention. Rulings as to the scope of cross examination, which rest largely in the sound discretion of the court, are not revisable in the absence of an abuse of such discretion. *Gero* v. *John Hancock Mut. Life Ins. Co.*, 111 Vt 462, 473, 18 A2d 154, and cas cit. No abuse is shown here by the exceptions to rulings of this nature. As to the other exceptions, when evidence received or rejected was on direct examination, it is not shown that the petitionees were harmed by the action of the court. *Bloomstrand* v. *Stevens*, 104 Vt 1, 3, 156 A 414. We find no reversible error in any instance.

After the evidence had been closed and both sides had rested, the petitionees moved to withdraw their rest in order to introduce evidence that the assets of the estate of Mark Moody were approximately $100,000. and so ample to pay the legacy left by George E. Moody to his widow. The motion was denied and the petitionees excepted. It is argued that this evidence would have been a factor to be considered by the court in exercising its discre-

tion in determining whether the nunc pro tunc order should be made. The petitionees concede that leave to withdraw a rest is discretionary with the court, but they say that under the circumstances the ruling was an abuse of discretion. We do not perceive an abuse in this instance. The petitioner's witnesses had left the court. The cause had been on trial for three days and a half, and the petitionees had fully availed themselves of the opportunity to introduce all material evidence. The value of Mark Moody's estate was immaterial to the issue upon which it was offered. The exception is not sustained.

Under their exception to the judgment of the trial court the petitionees present two grounds—(1) that by the proceedings in the Probate Court on July 7, and July 21, 1930, they were denied due process of law because notice thereof was not given to Mr. Harvey, attorney, who had appeared for Mrs. Moody, in accordance with Probate Court Rule 3(4); and (2) that the right to appeal was denied them because a written order or judgment allowing the account was not entered upon the records of the Probate Court.

So far as material, Probate Court Rule 3(4) is as follows: "When an attorney has appeared or entered an appearance in any case or estate, he shall be entitled to notice of each legal step subsequently taken by other parties, except as he shall waive such notice." Rule 12 provides that "Judges of Probate may take any case out of these rules when in their judgment the equities of the case warrant them in so doing."

 Notice of the time and place of examining and allowing Wheeler's administration account was ordered to be given, and was given by publication in a newspaper of the probate district, in accordance with G. L. 3276, now P. L. 2821, which provides that such notice may be given personally to the persons interested therein, or by public notice, as the court directs. The method employed was "public notice" under the statute, *Barber* v. *Chase,* 101 Vt 343, 350, 143 A 302. It constituted constructive notice to all concerned and did not violate the requirements of due process of law under the Fourteenth Amendment to the United States Constitution. *Everett* v. *Wing,* 103 Vt 488, 492-3, 156 A 393, cert. den. 284 US 690, 52 S Ct 266, 76 L ed 582. We are of opinion that Probate Court Rule 3 (4) was intended to implement the statute,

but not to override it by restricting the court to the giving of personal notice only to counsel of record. If this were so parties who had not appeared by counsel would receive no notice at all and might well claim a denial of due process. The rule is to be read in connection with Rule 12, which leaves the giving of notice to attorneys to the judgment of the Probate Judge, in view of the equities of the situation as he may find them to be. This rests a wide discretion in him, but, the contrary not appearing, we must assume that it was exercised judicially. Nothing is shown concerning the reason for the failure to give notice to Mr. Harvey, but since it was within the authority of the court to take the case out of the rule, it must also be assumed that his authority was not exercised arbitrarily or capriciously under the rule that acts which purport to have been done by public officers in their official capacity and within the scope of their duty will be presumed to have been regular and in accordance with their authority. *State ex rel Billado* v. *Control Commissioners,* 114 Vt 350, 356, 45 A2d 430 and cas. cit. The fact that we are dealing with an omission and not an act, does not affect the application of the foregoing rule to the circumstances of this case. Indeed, Mrs. Moody's administratrix is the only one to whom the rule could be claimed to apply because it does not appear that either Ollie N. Perry, personally, or Fontinelle Goodrich were represented by counsel at any time prior to the hearings of July 7 and 21, 1930. The notice of the hearing on July 7 having been given as provided by statute the appellants not having attended cannot assert prejudice because no further notice was given of its adjournment. *McNeish* v. *Hulless Oat Co.,* 57 Vt 316, 324. We hold therefore that there has been no denial of due process of law in the proceedings relative to Wheeler's administration account.

P. L. 3005 (G. L. 3455 in 1930) provides that: "A person interested in an order, sentence, decree or denial of a probate court, who considers himself injured thereby may, except as otherwise provided, appeal therefrom to the county court, if application in writing therefor is made and filed in the register's office within twenty days from the date of the decision appealed from." By P. L. 2730 (formerly G. L. 3185) it is made the duty of the register of probate to perform the duties of clerk of the court and to "keep a record of each order, sentence and decree of such court and of other things proper to be recorded. . . ."

▆▆▆▆▆ There is a distinction between the rendition of a judgment and the entry of it. The first is the judicial act of the court and the second the ministerial act of the clerk and is merely the record and evidence of what has been adjudicated. *Commissioners of Vigo County* v. *City of Terre Haute,* 147 Ind 134, 46 NE 350, 351; *Parrott* v. *Kane,* 14 Mont 23, 35 P 243, 244; *State* v. *Brown,* 31 Wash 397, 72 P 86, 87, 62 LRA 974. As we have seen P. L. 3005 limits the time for taking an appeal to twenty days from the date of the decision of the Probate Court. The "decision" refers, of course, to the judicial act of making an order or decree and not to its entry on the record. There is nothing in the statute that requires the decision to be in writing. The omission of the ministerial act of making the entry does not enlarge the period within which the appeal may be taken, since the statute expressly makes that period to commence at the date of the decision. Where, as here, the interested parties have received legal notice of the hearing, and have not attended, but have made no inquiry as to the result for thirteen years thereafter, it is not apparent that they can claim prejudice for lack of formal entry. If an appeal had been seasonably applied for, and no entry had been made at that time, there can be no doubt that it would have been done, because appealing parties are entitled to have a record furnished them as evidence of what has taken place on trial. The appeal, which is granted upon written application, is one thing, and the record, which is necessary to perfect the appeal, is another.

The appellants lean heavily upon a part of a sentence which they quote from the opinion of *Beam* v. *Fish,* 105 Vt 96, 97, 163 A 591, that, except as provided by G. L. 2262 (P. L. 2072) "exceptions are not to be allowed until a judgment has been entered in the trial court. . . ." The context, however, does not bear out their contention that this passage is authority for the proposition that no appeal lies until the judgment has been recorded. The question was whether a record which showed that the cause was left unfinished as to one of the parties presented a question for review in this court. We held that it did not, and the language quoted means only that, except as the statute otherwise provides, the judgment must be final with respect to all parties before it is subject to review upon exceptions. Nothing therein is to be construed as holding that the judgment must be entered upon the records of the

court before an exception can be taken to it, although of course all the necessary proceedings must be included in the record before the exception is passed upon here.

The case of *Coe* v. *Erb,* 59 Ohio St. 259, 52 NE 640, 69 ASR 764, although containing some expressions contrary to the conclusion that we have reached, will be found on examination to be distinguishable from the present case. A statute provided that lands and tenements of a defendant, not exempt from execution, should be bound for the satisfaction of the judgment against him from the first day of the term at which it was rendered. Another section provided that all judgments should be entered on the journals of the court. The issue was whether a judgment announced though not entered on the journal during the term created a lien upon the real estate of the judgment debtor as against a bona fide purchaser who bought during the term but before the judgment was announced, without knowledge of the pendency of the action. There was a nunc pro tunc entry of judgment subsequent to his purchase. It was said that, under the statutes above mentioned, the judgment was not complete until entered on the journal, and not effective to create a lien upon the real estate before being so entered. The analogy of recording acts was invoked. The bona fide purchaser, therefore, was protected, and the nunc pro tunc order could not affect his intervening rights. The language of the foregoing statutes and our material enactments are not alike. With us the period for making application for an appeal from an order or decree of a probate court commences when the decision is rendered, and we have no question here that concerns the rights of innocent third persons.

All questions briefed, although not specifically mentioned in this opinion, have been considered.

*Judgment affirmed. To be certified to the Probate Court for the District of Washington.*