# State Highway Board v. Carroll K. Loomis et als

[165 A.2d 572]

September Term, 1960

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed November 1, 1960

*Louis P. Peck,* Legal Assistant to Attorney General, for the petitioner.

*Gannett & Oakes* for the petitionees.

**Barney, J.** To advance the construction of U. S. Route 91 north from Brattleboro through Putney and Westminster to the Rockingham town line the State Highway Board filed a petition with the appropriate court in Windham County. The board sought determination of the necessity for the taking of certain lands and rights lying along the proposed line of this highway, which is to be a limited-access road forming part of the so-called interstate highway system. Hearings were held, findings made and two judgment orders issued. The first order held that the board had established necessity for takings along the projected line of the interstate itself, but had failed to establish the necessity for the takings proposed in connection with the interchange set out in its petition. The court ruled that the appropriateness of an interchange in the area was established, and ordered a further hearing on the subject, which was duly held. Thereafter the court issued a second order holding that necessity had been established for a taking in connection with an access road and interchange located on different properties and along a line nearly two miles north of the access road and interchange location proposed in the board's petition.

Certain interested property owners took exception to the first judgment order and the highway board took exception to the second. Although the proceedings originated under a single petition, with the

division in the court below into separate "main line" and "access road" determinations, the two issues were separately docketed. Before this Court the questions relating to the two judgment orders were separately argued, but on the same day and with recognition of their interrelated nature on the part of all counsel concerned. Issues raised by certain of the exceptions have relevance with respect to both judgment orders. For that reason, this opinion will treat all of the appealed questions raised in connection with the petition.

At the hearing interested persons were allowed and invited to express opinions and make statements in connection with the proposed highway routing. No witness oath was administered in connection with these statements. When it was proposed to cross-examine one of these persons, the trial judge ruled that such examination would be permitted only if the witness oath were administered and the testimony taken as direct rather than cross-examination. Exception was taken to this ruling by counsel for the property owners and the reception of unsworn testimony objected to. This is claimed to be error so prejudicial as to require a new hearing.

Undoubtedly with this exception in mind the court in its findings referred to its allowance of the making of statements by certain parties who declared themselves as having special or particular interests in the proceedings. The court then said, "Such statements represented personal opinions, not under oath, and were excluded from consideration in the preparation of these Findings."

Where the tribunal itself declares that statements given before it were not used in preparing findings, this Court will presume no use was made, unless the contrary is demonstrated. *Bloomstrand* v. *Stevens,* 104 Vt. 1, 4, 156 A. 414; *Raithel* v. *Hall,* 99 Vt. 65, 74, 130 A. 749; *Lynch's Admr.* v. *Murray,* 86 Vt. 1, 13, 83 A. 746. No showing of improper use of unsworn testimony has been made before us, and the burden rests upon the complaining party to show that the actions of the trier were prejudicial. *In re Estate of Moody,* 115 Vt. 1, 10, 49 A.2d 562, 331 U.S. 814, 67 S. Ct. 1201, 91 L.Ed 1833; *In re Taft Estate,* 114 Vt. 505, 512, 49 A.2d 102.

Highway engineer Gordon Lane testified on behalf of the board with respect to the expenses involved in building the interstate highway along the route proposed in the board's petition. On cross-

examination questions were directed to him concerning the comparable expenses if the highway were built along a certain alternate line urged by the property owners, which was at one time studied by the highway department. He gave cost figures for construction, preliminary engineering and right of way for both the proposed route and the alternate route. His figures showed a differential of $600,000.00 in favor of the proposed line, with a total cost estimate of $3,126,000.00 for the proposed route. He was then asked if he had a breakdown of these cost figures and he replied that he did not. The cross-examiner thereupon inquired if the department had them and the witness replied he was sure they did. Demand was then made for the production of the figures. It subsequently developed that the information had been mislaid and was no longer in the possession of the department. However, counsel for the board, although he stated that he felt that such evidence was part of the property owner's case, agreed to have the figures recalculated and furnished before the end of the hearing.

During the course of extended cross-examination a complete breakdown of the construction, preliminary engineering and right of way cost estimates for the proposed line came into evidence by way of testimony or exhibits. The projected possible land taking on the alternate route, a property use breakdown for that route and aerial photographs showing its location, all as worked up by the department, were also furnished during the examination of this witness. The detailing or breakdown of the construction cost figures for the alternate route were not provided until after the close of the hearing, and admittedly were the product of a recomputation by the department. The exception of the property owners asserts that the failure to provide these figures accompanied by an opportunity to further cross-examine the witness Lane was such an abridgment of their right of cross-examination as to be a denial of due process.

 The right of cross-examination is so basic to our system of trial process that a showing that it was totally denied as to material testimony amounts to a demonstration of error. *State* v. *Teitle,* 117 Vt. 190, 196, 90 A.2d 562. Provided the right itself is not infringed, however, control of the extent of cross-examination is within the discretion of the trial court. *Gero* v. *John Hancock Life Ins. Co.,* 111 Vt. 462, 473, 18 A.2d 154. In the absence of an abuse of the exercise

of discretion in limiting the scope and extent of cross-examination, the ruling of the trial court is not revisable here. *State* v. *Aronson,* 111 Vt. 129, 130, 11 A.2d 214; *Parker* v. *Hoefer,* 118 Vt. 1, 7, 100 A.2d 434, 38 A.L.R.2d 1216.

The course of the examination of the witness Lane has some significance. He was the first witness for the board when the hearing opened on the morning of April 10, 1959. During that morning his direct examination was completed and cross-examination begun which lasted the rest of the day. The hearing adjourned until April 13 when this witness continued his testimony under redirect examination and recross-examination, questioning on both sides ending during the morning session. The hearing continued on April 15 and at noon on April 16 the board rested. The evidence presented by the property owners then went in and the evidence closed that same afternoon.

At the close of the board's case the request for the cost figures was renewed and it was then indicated that recomputation might require a week or more. The court stated it was taking the motion under advisement and made no ruling. At the close of all of the evidence the property owners rested subject to production of the cost figures and further examination of witness Lane in connection with them. The court then gave the board two weeks to produce the figures. It further ruled that insofar as the motion, by implication or direct request, represented a continuance of the hearing for the purpose of direct and cross-examination on those figures, the motion was denied. It is with the exception to this ruling, described above, with which we are now concerned.

Quite properly, the trial judge viewed the motion as having two aspects, the first being a request that the highway board furnish certain information. Since the board had consistently indicated its willingness to provide the requested data, there was no occasion for the court to rule, other than to establish the time within which the information was to be supplied.

The second aspect of the motion related to further cross-examination of the witness Lane. As has been shown, extended opportunity to cross-examine had already been provided and had been put to use. What was sought here went beyond an examination of the witness on the basis of the state of his knowledge, observation,

recollection, veracity and other testimonial qualifications as of the time he was presented as a witness. Having stated that he did not himself have and could not then and there reproduce the details of the alternate line cost computations, he apparently was to school himself in the figures as recomputed by the department so as to then be eligible for cross-examination on them. This the trial judge refused to permit, in the interests of expedition. It is in precisely this area of pursuit of details relating to legitimate subjects of cross-examination that the discretion of the trial court to impose a limitation is properly brought into play. The property owners were entitled to show the testimonial shortcomings of the witnesses as they were while they were then on the stand, but having done that, nothing required the court to have them later recalled in a different state of preparation for further cross-examination. *State* v. *Bean,* 74 Vt. 111, 114, 52 A. 269.

In No. 242 of the Acts of 1957 the legislature rewrote the highway condemnation law. The old system that prevailed under V. S. 47, §4977 required the submission to commissioners appointed by the court of the issues of necessity for the proposed highway project and of damages consequential on the taking. The authority of the tribunal was defined in these terms by V. S. 47, §4978:

"The court may accept or reject the report in whole or in part and by its order may establish, alter, resurvey, widen, or change such highway, or make such other order as appears just and render judgment for the petitioners for such damages as they have severally sustained."

The new law is embodied in Chapter 5 of Title 19 of the Vermont Statutes Annotated. In 1959 some procedural amendments were made in this chapter, but no issue raised by this appeal is concerned with them.

The revised procedure eliminates the hearing before commissioners and puts the issues directly before a court constituted as required by 19 V.S.A. §227, as amended. It also separates the question of determining the necessity for taking particular land from the question of compensation for the land taken, by providing for separate hearings. The necessity for the proposed taking is at issue first and is determined prior to actual condemnation and award of damages. 19 V.S.A. sections 228, 229 and 230.

The province of the court relative to the taking of property interests is set out in the following terms in 19 V.S.A. §227:

"Such court shall, by its order, determine whether the necessity of the state requires the taking of such land and rights and may modify or alter the proposed taking in such respects as to the court may seem proper."

On the basis of this statute the board contends that the court below exceeded its statutory authority when it rejected the so-called Watkins interchange and access road proposed in the board's petition and then went on to find necessity for an interchange and access road at a completely different location and along a new line called the "B-line." The board urges that the change in statutory language supports their position. The supporters of the "B-line" counter by saying that the language difference is not sufficiently marked to be construed as a limitation. They make the further point that the action of the court is inferentially authorized by this Court's opinion in *Divoll* v. *State Highway Board,* 120 Vt. 437, 144 A.2d 302. The importance of this question, in view of the ambitious highway program already in progress in Vermont, cannot be denied.

The Divoll case arose under the previous highway condemnation law. The court there had the power to "establish, alter, resurvey, widen or change such highway." Under the present legislation the court's authority operates not on the projected line or location of the highway itself but only on the land taking proposed. In view of the comprehensive reexamination and revision of the highway condemnation law reflected in No. 242 of the Acts of 1957, the alteration of the province of the court must be taken to have been deliberate. *Conn* v. *Brattleboro,* 120 Vt. 315, 322, 140 A.2d 6; *In re Cartmell Estate,* 120 Vt. 228, 232, 138 A.2d 588.

■ The amended version also omits from the description of the authority of the court the words "establish," "resurvey," "widen" and "change" and adds the word "modify." The omitted words are all suggestive of the power to initiate or substitute a new or different location for the proposed highway, while the added word and the only word continued over into the new statute, "alter," are appropriate to ordering or permitting variations in the land taking proposed in

connection with the highway line set out in the petition. This evidences an intent by the legislature to limit the duty of the court hearing the petition to a determination of whether or not the test of necessity is met on the line and for the taking proposed by the highway board, with the power to modify or alter having reference to the extent of land taking required under the petition.

19 V.S.A. §228 provides support for the conclusion that the court's authority is now restricted to the function of reviewing the issue of necessity of takings proposed by the highway board. Under its terms, the board has the privilege of seeking to have the appropriate lands condemned after a determination of necessity, provided proceedings are instituted within one year. Condemnation under this statute is not compulsory. Courts do not look with favor on the making of orders that are subject to being set at naught or avoided at the legitimate option of the party against whom the order is directed. This could, and, in most cases, would, be the fate of an order purporting to require construction of a highway along a route not acceptable to the highway board. Moreover, the ensuing year of delay would defeat the stated purpose of 19 V.S.A. §1868 to expedite these proceedings.

The judicial process is far better adapted to reviewing the fairness and propriety of proposals than to initiating projects for action by other agencies. This is particularly true of matters such as proposed highway construction involving complex surveys and research of a highly technical engineering nature. It is one thing to review such engineering proposals, weighing them against statutory standards; it is quite another to create such proposals from information adduced during a court proceeding from the testimony of witnesses, however well-informed. The handicaps of a court-generated proposal are obvious. We therefore hold that whatever power the court may have had with respect to state highways to establish a new highway line or a different land taking beyond the bounds of a highway board petition was abridged by the enactment of No. 242 of the Acts of 1957. There is, under this statute, a power to alter or modify a proposed taking so that the court is not in the position of having to accept the highway board's petitions in their exact form should there be some unjustified taking included in a proposal otherwise valid and necessitous.

■ Three things the new enactment did not do. First, the standards of necessity set out in *Latchis* v. *State Highway Board*, 120 Vt. 120, 122 et seq., 134 A.2d 191, have not been changed. Moreover, evidence relating to possible alternate routes remains relevant for comparison purposes, since reasonableness is a comparative test involving a weighing against alternatives, and the Latchis case requires only a showing of reasonable necessity in these cases.

■ Second, the new law did not enlarge the authority of the highway board with respect to powers of condemnation. The authority given in V. S. 47, §4971 is continued unchanged and unamended as 19 V.S.A. §222. This same authority is also repeated in substance, subject to the approval of the governor, in the statutory provisions relating to limited access facilities, 19 V.S.A. §§1861-1877.

■ Third, it did not purport to deprive any party of his right to judicial review of his legal and constitutional rights. Original hearing is now had before a judicial tribunal with right of appeal to this Court in the usual manner for review of exceptions. In short, the effect of the new act was in substance to allow the question of necessity to be determined in advance and independently of questions of damage, and to insure that courts would have to deal only with highway projects fully supported by the essential engineering studies and surveys of affected lands. These are valid legislative objectives and were appropriately carried out.

In the light of the foregoing, no error appears in the judgment order relating to the "main line" of the proposed highway project, but with respect to the judgment order relating to the "B-line" access road and interchange, the court below exceeded its authority.

■ As noted earlier, in its first order the court made a determination that necessity had been established for an interchange and access road somewhere along the length of the "main line" embraced by the petition before it. In the second order the court rejected the necessity for the Watkins line interchange urged by the board in favor of the "B-line." While the adjudication that necessity had not been established for the Watkins proposal could stand alone, since it was made while the court was under a misapprehension that the law permitted the court to set out a line of its own, fairness and justice to all

interested parties would seem to require that the whole question of the interchange and access road location be reconsidered on remand. This is in line with our discretionary authority to remand in a manner to prevent a failure of justice. *Laferriere* v. *Saliba,* 119 Vt. 25, 34, 117 A.2d 380.

*The judgment order finding necessity for the taking of certain property in connection with the line of the interstate highway itself and for the location of an interchange and access road at some point along that line is affirmed; the judgment order purporting to find necessity for an interchange and access road along a certain "B-line" as against the interchange and access road proposed in the petition is reversed, and the cause is remanded for further hearing as to the necessity of land taking in connection with an interchange and access road as part of the project set out in the petition of the State Highway Board.*