# Chittenden Solid Waste District v.
# Hinesburg Sand & Gravel Co., Inc.
# and Delford & Barbara Janes

[730 A.2d 614]

No. 97-063

Present: Amestoy, C.J., Dooley, Morse and Skoglund, JJ., and Allen, C.J. (Ret.),
Specially Assigned

Opinion Filed April 9, 1999

**Appeal** from condemnation of land for use as landfill. Chittenden Superior Court, *Martin*, J., presiding. *Affirmed.*

*Brian J. Sullivan* and *Jon T. Anderson* of *Burak, Anderson & Melloni, PLC*, and *Joseph E. Frank* of *Paul, Frank & Collins, Inc.*, Burlington, for Plaintiff-Appellee.

*Charles T. Shea* and *Robert F. O'Neill* of *Gravel and Shea*, Burlington, for Defendant-Appellant.

**Morse, J.** Hinesburg Sand & Gravel Company, Inc. (HS&G) appeals from a judgment of the Chittenden Superior Court condemning its land in Williston for use as a landfill. HS&G claims that the trial court erred by: (1) not deciding whether a publicly-owned landfill was needed in Chittenden County; (2) considering and imposing a condition on Chittenden Solid Waste District (CSWD) to make sand available to HS&G after condemnation (the "stockpile plan"); (3) excluding evidence that CSWD acted in bad faith by seeking to condemn the property; and (4) making clearly erroneous findings of fact. We affirm.

In March 1987, CSWD was organized as a union municipal district in response to 24 V.S.A. §§ 4861-4868. Its statutory purpose under 10 V.S.A. § 6601(e) was to provide for efficient, economical and environmentally sound management of solid waste produced by the member municipalities. All of the municipalities of Chittenden County are members of CSWD except for Underhill and Bolton. Included in the approval of CSWD by the Legislature was a grant of authority "to exercise the power of eminent domain within the District." Municipal Corps., No. M-12 (1989 Adj. Sess.), Art. I, § 5(i). After a lengthy process to determine appropriate landfill sites within Chittenden County, CSWD selected land owned by HS&G as the most suitable site. HS&G is a family-owned business, processing sand and sand aggregate. The selected site for the landfill has significant reserves of "Redmond sand," a unique sand utilized by HS&G in its processing of specifically formulated sand blends.

After CSWD adopted a resolution authorizing condemnation of this land for purposes of developing a long-term regional landfill, condemnation proceedings were commenced in Chittenden Superior Court under 24 V.S.A. §§ 2299a-2299k. This case was previously before us, where we reversed dismissal of the petition and remanded for trial on the merits. See *In re Chittenden Solid Waste Dist.*, 163 Vt. 185, 657 A.2d 197 (1995). On remand, thirty-five days of trial were devoted to the merits. Before the trial court issued its opinion, HS&G filed a

motion for a new trial, asserting that recent evidence raised additional questions about the feasibility of establishing a publicly-owned landfill in Chittenden County.

In the judgment order, the court concluded that necessity required the taking of the land, but the taking would be subject to the condition that CSWD, at its cost and expense, make the Redmond sand available to HS&G, its successors or assigns, for thirty years or until all the available sand was retrieved, whichever occurred first. CSWD had the option of making the sand available directly to HS&G or storing it at the site or on nearby land. CSWD was obligated to preserve or enhance the value of the sand during the excavation process and to protect the sand from any significant contamination by litter or landfill leachate.

The court denied HS&G's motion for a new trial. Consequently, HS&G filed a post-judgment motion for new trial or reconsideration and amendment of the judgment, which was also denied. This appeal followed.

## I.

The first issue is whether the trial court erred by concluding that because the Legislature had determined the necessity for a long-term regional landfill in Chittenden County under 10 V.S.A. § 6601(e), the court need not reassess the issue. It was HS&G's position that the overall need for a project requiring the taking of private property is part of the necessity determination to be made by the court de novo. HS&G asserts that the court failed to consider whether or not a landfill was needed in the county.

To address the increasingly complex social, economic, environmental and legal issues of managing solid wastes, the Legislature enacted Vermont's Waste Management Act. See 10 V.S.A. § 6601. The intended effect was to establish "a comprehensive state-wide strategy for the management of waste" in Vermont, see 10 V.S.A. § 6604(a), by the creation of union municipal districts. See 24 V.S.A. § 4861. In 1990, the Legislature approved CSWD as the union municipal district for Chittenden County. See Municipal Corps., No. M-12 (1989 Adj. Sess.), Art. I, § 1. Further, the Legislature granted CSWD the authority to "exercise the power of eminent domain within the District." Id. Art. I, § 5(i); see also 24 V.S.A. § 2299a(a) (authorizing solid waste management district to "acquire property . . . in order to construct and operate a sanitary landfill"). This accords with the policy concerns expressed by the Legislature when it enacted com-

prehensive waste management legislation. See 10 V.S.A. § 6601(b) (overall problems of solid waste management are a matter of state-wide concern and necessitate state action); see also *id.* § 6601(e) (providing technical and financial leadership to municipalities for siting of solid waste management facilities that over long term are environmentally sensible and economically feasible).

The process for solid waste districts to acquire property through eminent domain for a landfill is governed by 24 V.S.A. § 2299e, which requires a court determination of necessity.* Included within the legislative grant of authority for a solid waste district to acquire property by eminent domain for a landfill, see 24 V.S.A. § 2299a(a), was a restriction that the district condemn only property lying within its boundaries. See *id.* § 2299a(b). Although the legislation does not explicitly state that a landfill should be located in Chittenden County, the underlying purpose of the legislation was to require comprehensive waste management — including the use of eminent domain to establish sanitary landfills and other solid waste facilities — by every solid waste management district in Vermont.

Contrary to HS&G's claim, the court in this case did determine that a long-term landfill was necessary in Chittenden County under § 2299b(1). The court noted that over 100,000 tons of solid waste are generated by Chittenden County residents each year and, absent a landfill, the current plan of indefinitely sending the waste elsewhere is not feasible. Further, the court noted that CSWD was responsible for managing solid waste under the State Solid Waste Plan. See 24 V.S.A. § 2202a. Statewide strategies for the management of solid waste under this plan include (1) prioritizing the successful siting of new lined land disposal facilities, (2) obtaining adequate landfill capacity, and (3) opening a new lined landfill in each region by 1991.

---

* Necessity is defined in 24 V.S.A § 2299b(1) as:

a reasonable need which considers the greatest public good and the least inconvenience and expense to the condemning party and to the property owner. Necessity shall not be measured merely by expense or convenience to the condemning party. Due consideration shall be given to the adequacy of other property and locations and to the quantity, kind and extent of cultivated and agricultural land which may be taken or rendered unfit for use by the proposed taking. . . . The court shall also consider and give effect to the policy of protecting earth resources, as set forth in section 6086 of Title 10. Consideration also shall be given to the effect upon home and homestead rights and the convenience of the owner of the land, to the effect of the facility upon scenic and recreational values, and to the effect upon the town grand lists and revenues.

Because the necessity determination requires consideration of the "adequacy of other property and locations," 24 V.S.A. § 2299b(1), a case might be made that no landfill in a particular county was needed because of the existence of suitable facilities nearby. On the record in this case, however, the court's assessment of necessity for a landfill in Chittenden County at the HS&G site was amply supported by the evidence, even if legislative findings on the issue were inadequate.

HS&G further argues that its motion to reopen the evidence should have been granted to enable it to refute the findings. Most pertinent to the decision to deny the motion, the court concluded that, even if it might be less expensive today to ship waste out of Chittenden County, the HS&G landfill "[l]ong-term, will not be more expensive than a transfer station." The court's findings demonstrate that it concluded that a landfill was necessary, at least in the long run, and that CSWD could begin proceedings now to meet future needs. Despite the fact that the court determined that it need not reassess the issue of necessity, we conclude that the court made the necessary findings of necessity in this case to support locating a landfill in Chittenden County at the HS&G site.

## II.

We next address HS&G's claim that the court exceeded its authority when it incorporated into its judgment the "stockpile plan" proposed by CSWD to make the Redmond sand available to HS&G following condemnation. HS&G objects to the plan on two grounds. First, it claims CSWD had not properly authorized the proposal by resolution of its board of directors. Second, HS&G argues that even if the proposal was authorized by the board, it was unauthorized by statute.

## A.

Under 24 V.S.A. § 2299c(a), the board must vote at a duly-warned meeting to adopt a resolution setting forth the necessity of the taking. The board approved a resolution authorizing the general manager of CSWD to instruct its attorney to seek an amendment to the petition committing CSWD to make the Redmond sand available to HS&G. HS&G claims that enforcing the plan is improper because the board never adopted the specific language of the petition as amended.

CSWD adopted a resolution establishing the necessity of the taking of HS&G's property on June 30, 1992. The adopted resolution was a

broad mandate to acquire the subject property owned by HS&G in fee simple absolute through eminent domain. Subsequently, CSWD, through its attorneys, filed a petition with the superior court to acquire the subject property through eminent domain. The petition was a twenty-one page legal document signed by the attorney representing CSWD and, unlike the adopted resolution, it described the property rights, demonstrated why the acquisition was necessary and why eminent domain was required. At its February 22, 1995 meeting, CSWD adopted a resolution that authorized its attorney to file an amended petition committing CSWD to a plan to make the Redmond sand available to HS&G.

Under 24 V.S.A. § 2299c(a), the district must vote to adopt a "resolution setting forth the necessity for the taking." A "resolution" is a "formal expression of the opinion . . . of an official body." Black's Law Dictionary 1310 (6th ed. 1990). After the adoption of the resolution, under 24 V.S.A. § 2299d(a), the district must "present a petition to the superior court . . . describing the property or rights, and stating why it is unable to acquire it without condemnation, and why its acquisition is necessary." A "petition" is defined as a "formal written application to a court requesting judicial action." Black's Law Dictionary 1145. Nothing in the language of § 2299c(a) or § 2299d(a) indicates that the solid waste management district was required to adopt the specific language of the petition presented to the court. Rather, under § 2299c(a), the Legislature mandated that the solid waste district adopt a resolution, or formal opinion, which set forth the necessity. Unlike the adopted resolution, the amended petition filed with the court by CSWD's attorney was a legal document committing CSWD to making sand available to HS&G. When the district presented the petition to the court, it was structured as a formal application to the court, requesting judicial action. Based on the plain meaning of § 2299c(a) and § 2299d(a), we conclude that the petition and the resolution are two distinct documents serving different functions. We determine that CSWD followed the statutory procedures of § 2299c(a) and § 2299d(a) in adopting the resolution to authorize CSWD's attorney to amend the petition.

## B.

HS&G next attacks the "stockpile plan" on the basis that the court lacked statutory authority to impose it. HS&G argues that 24 V.S.A. § 2299e(b) allows no middle ground: the court may either grant eminent domain unconditionally or deny it altogether. CSWD

counters that the judgment order does not attempt to condition the property rights under condemnation but only incorporates into the judgment a mechanism for the court to give effect to the earth resources provision of § 2299b.

The Legislature incorporated broad language into the necessity determination requiring the court to protect earth resources under the rubric of Act 250. See § 2299b(1) ("The court shall also consider and give effect to the policy of protecting earth resources, as set forth in section 6086 of Title 10."). Unlike the highway condemnation statutes, for instance, the court in this context is mandated to include a consideration of the extractable earth resources in the necessity determination. Compare 10 V.S.A. § 6086(a)(9)(D) (permit will be granted when "development . . . will not prevent or significantly interfere with the subsequent extraction or processing of the mineral or earth resources") with 19 V.S.A. § 501(1) (defining necessity without reference to extractable earth resources).

The language of 24 V.S.A. § 2299e(b) is straightforward: the court must determine "whether necessity requires the taking of the land and rights as set forth in the petition." Thus, the court must determine whether the taking of land and rights, *as set forth by the petitioner*, is a necessity as defined in 24 V.S.A. § 2299b(1). The petitioner is required to file a petition, "describing the property or rights, and stating why . . . its acquisition is necessary." 24 V.S.A. § 2299d(a). In other words, the court may not grant relief on its own terms. See *State Transp. Bd. v. May*, 137 Vt. 320, 325, 403 A.2d 267, 270 (1979) (court may review proposals and weigh them against statutory standards, but it is impermissible for court to create such proposals on its own initiative).

Here, the court, in its findings of fact and conclusions of law, determined that:

> CSWD has given reasonable consideration for the greatest public good and the least inconvenience and expense to itself and HS&G with its plan to make the Redmond sand available to HS&G *if it wants it*. The plan also gives reasonable consideration and effect to the policy of protecting earth resources, such as the Redmond sand, as required by 10 V.S.A. § 6086.

(Emphasis added.) The court granted a taking in fee simple "subject to the condition that CSWD takes the actions described [by the stockpile plan in] CSWD's Petition . . . as amended."

We conclude that the court did not impermissibly modify or alter CSWD's proposal. CSWD would acquire HS&G's property in fee simple by eminent domain. Unlike *May*, here the court did not reject CSWD's proposal and substitute its own solution. See *id.* at 322-24, 403 A.2d at 269. Instead, the court included CSWD's entire amended petition in its judgment order in keeping with 24 V.S.A. § 2299e(b). In the end, the court granted CSWD complete title to HS&G's property as described in the petition.

The condition objected to by HS&G was imposed on CSWD, not HS&G. HS&G could take it or leave it. The condition commits CSWD to adhere to a plan, at CSWD's cost and expense, to make the Redmond sand available to HS&G. The court simply ordered that the sand be made available to HS&G if it chose to take it. We conclude that in so determining the court did not bind HS&G to any conditions subsequent to the condemnation, but instead was merely adhering to the legislative mandate under § 2299b(1) that the court consider and give effect to the policy of protecting earth resources as required by 10 V.S.A. § 6086. See *State Highway Bd. v. Erickson*, 133 Vt. 305, 309, 336 A.2d 206, 208 (1975) (function of court is to understand and implement the policies of law established by legislature); cf. 19 V.S.A. § 507(b) (in condemnation proceeding, after finding that a taking is necessary for a proposed highway, court may direct transportation agency to construct cattle passes under highway if a reasonable need is demonstrated by owner of condemned land); see generally *In re Agency of Transp.*, 157 Vt. 203, 208, 596 A.2d 358, 360 (1991) (although court may grant a cattle pass condition in highway condemnation necessity petition, Act 250 board may impose additional conditions to preserve environment).

HS&G further maintains that without the court's inclusion of the "sand availability plan" the condemnation would not meet two of the statutory requirements for necessity: that it impose the least inconvenience and expense on the property owner and that it comply with the policy of protecting earth resources. See 24 V.S.A. § 2299b(1). Because we determine that the court could grant eminent domain with the sand availability plan option, the issue is moot. The court did take into account "inconvenience and expense" by offering HS&G the choice whether to accept the sand. Depending on HS&G's choice, the issue of expense may be relevant in the damages portion of the proceedings yet to come. See *In re Chittenden Solid Waste Dist.*, 163 Vt. at 189, 657 A.2d at 200 (Landfill Condemnation Statute clearly

mandates that necessity be tried and appealed first, with damages tried and appealed thereafter).

### III.

HS&G next claims that the court erred when it granted CSWD's motion in limine to exclude the testimony of board members of CSWD. HS&G offered to prove that CSWD acted in bad faith in seeking the condemnation through the testimony of CSWD board members that: (1) the decision to attempt to acquire HS&G's property was made before the condemnation statute was drafted; (2) prior to voting to condemn HS&G's property, the board did not adequately consider least inconvenience and expense to HS&G; (3) the staff did not provide the board with the data used by the staff in site selection; (4) CSWD did not set forth a reasonable compensation for the value of the property; and (5) CSWD did not consider or account for protection of earth resources. HS&G contended that this testimony would have demonstrated the impropriety of CSWD's actions in voting to condemn HS&G's property.

We will not interfere with a necessity determination if it is made in good faith and is not capricious or wantonly injurious. See *Rossetti v. Chittenden County Transp. Auth.*, 165 Vt. 61, 68, 674 A.2d 1284, 1288 (1996). In *In re Chittenden Solid Waste District*, we determined that the court may consider a contention that the condemnor acted in bad faith during the necessity phase of the condemnation proceeding under § 2299d, and if "the court finds a bad faith undertaking by a condemnor, the result will be either failure of the necessity case or compensation in a just and fair amount, as the case may be." 163 Vt. at 190, 657 A.2d at 200.

Here, the court concluded that the vague offers of proof, even if true, failed to demonstrate that the condemnation was for improper motives or for private gain, nor did they show any conscious wrongdoing influenced by ill will. See *Keus v. Brooks Drug, Inc.*, 163 Vt. 1, 4, 652 A.2d 475, 478 (1994) (trial court's decision to admit or exclude evidence will not be reversed "'absent an abuse of discretion resulting in prejudice'") (quoting *Gilman v. Towmotor Corp.*, 160 Vt. 116, 122, 621 A.2d 1260, 1263 (1992)). Thus, the court declined to permit HS&G to call the commissioners to testify. See *Public Serv. Comm'n v. Patuxent Valley Conservation League*, 477 A.2d 759, 767 (Md. 1984) ("[O]nly a strong preliminary *showing* of bad faith or improper behavior will allow a party challenging agency action to [call] the individual decision makers [to testify].").

Moreover, the court determined that all proffered evidence which related to the adequacy of the compensation offer or damages resulting from the condemnation was irrelevant to the trial on the merits of necessity. See V.R.E. 402 (irrelevant evidence is inadmissible); *In re Chittenden Solid Waste Dist.*, 163 Vt. at 189, 657 A.2d at 200 (establishing that Landfill Condemnation Statute mandates that necessity be tried and appealed first, while judicial determination of damages is tried and appealed afterwards); see also *State Highway Bd. v. Loomis*, 122 Vt. 125, 130, 165 A.2d 572, 576 (1960) (determining that necessity for the proposed taking is at issue first and is resolved prior to actual condemnation and award of damages). We conclude that the court acted within its discretion in excluding the proffered evidence.

## IV.

Finally, HS&G contends that several of the court's findings of fact are clearly erroneous because there is an insufficient evidentiary basis. HS&G fails to specify which findings it believes are erroneous or not supported by credible evidence and, therefore, we decline to review this claim. See *Perrott v. Johnston*, 151 Vt. 464, 467, 562 A.2d 459, 461 (1989) (Court need not search for errors not supported by argument or pointed out in the record).

*Affirmed.*