E. D. KEYES & CO. *v.* UNION PACIFIC TEA COMPANY.

May Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed October 8, 1908.

*Principal and Agent—Agent's Authority—Purchase of Goods—*
*Written   Contract   of   Agency—Construction—Ejusdem-*
*Generis Rule—Erroneous Submission to Jury—Agent's Un-*
*authorized Transactions—Knowledge and Silence of Prin-*
*cipal—Effect—Estoppel—Evidence.*

In assumpsit for a chest of tea and nine barrels of sugar sold and
delivered to the manager of defendant's branch store, needed
to replenish the stock thereof, and subsequently sold in the due
course of business at said store and the avails mingled with other
money received thereat for goods sold and by said manager sent
to defendant, it appeared that said manager was employed by de-
fendant under a written contract providing that he was to have
the general charge and management of the sale of defendant's
merchandise at said store and such other authority as was therein
specifically conferred; to engage and oversee such employees
as defendant deemed necessary; to have the custody of all
defendant's property contained in said store or used in the busi-
ness thereat; was to sell only that merchandise of defendant
which should be entrusted to him for that purpose; was to incur
expense and make disbursements for defendant's account from
the proceeds of sales as follows: for the salaries of himself and of
the other employees of said store, commissions of salesmen, for gas,
electric light and power, advertising, temporary wagon or harness
repairs, feed and shoeing of horses, freight and cartage, express,
the hire of horses and wagons, services of veterinary surgeons,
"and other petty small items necessary for the maintenance of the
store or the prosecution of the business thereat"; and that he
should have no authority to subject defendant to any liability
except as therein expressly declared. *Held*, error to submit to
the jury the question whether said purchases were "petty pur-
chases," or "necessary for the maintenance of the store and the

prosecution of the business thereat," within the intent of the quoted provision of said contract; but the court should have ruled that in favor of defendant as matter of law, under the *ejusdem-generis* rule.

Buying and selling are so distinct in nature and so independent of each other, that an agent's authority to buy cannot be inferred from his authority to sell.

If a principal, without objection, allows his agent to act as such beyond his authority, that authority is, as to third persons, thereby correspondingly enlarged by implication; and the principal is thereafter bound by estoppel to those who deal with the agent as such, within the apparent scope of his authority, and in ignorance of his transgression thereof.

The silence of a principal when he knows of an unauthorized transaction by his agent as such is evidence of the agent's authority to do the like in the future and before seasonable notice of want of authority.

Evidence examined and *held* sufficient to show such knowledge by defendant of the unauthorized purchase of goods from plaintiff by defendant's agent acting as such, and thereupon such silence on its part, that it was bound by said agent's subsequent like purchases from plaintiff.


GENERAL ASSUMSIT for goods sold and delivered. Plea, the general issue. Trial by jury, at the March Term, 1907, Rutland County, *Waterman,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

At the close of all the evidence the defendant moved for a verdict, for that in the purchases in question Moore exceeded his authority as agent, as set forth in the written contract of agency; that this was never brought to the knowledge of the defendant, nor authorized by it; and that "there is no sufficient evidence on which to base a verdict for the plaintiff." Motion overruled, to which the defendant excepted. The defendant excepted to the court's failure to comply with its requested instruction to the jury that the section of the written contract of agency which is quoted in the opinion does not apply to the purchase of merchandise to be sold by the agent; that the words "other petty small items necessary for the maintenance of said store or the prosecution of the business thereat," do not

permit the purchase of goods on credit, and is not a question for the jury.

*Butler & Moloney* for the defendant.

The persons dealing with an agent are bound to measure the scope of his authority and if they do not use proper care in that respect they cannot complain. *Stewart* v. *Woodward,* 50 Vt. 78; *Putnam* v. *French,* 53 Vt. 402; *Griggs* v. *Selden,* 58 Vt. 561; *Cleveland* v. *Place & Co.,* 63 Vt. 127; *Moore* v. *Skyles,* 114 Am. St. Rep. 801. If an agent in excess of his authority borrow money or purchase goods on the credit of his principal, and the money or goods go for the benefit of the principal, all without his knowledge, he cannot be held liable either for the money or goods notwithstanding these facts may afterwards come to his knowledge in a suit for the price. *Spooner* v. *Thompson,* 48 Vt. 259; *Emery* v. *Thompson,* 72 Vt. 614; *White* v. *Langdon,* 30 Vt. 599; *Strong* v. *Ellsworth,* 26 Vt. 366.

The defendant's requested instruction as to the construction of the written contract should have been complied with; that construction was for the court. *Gove* v. *Downer,* 59 Vt. 139; *Davis* v. *Bowers Granite Co.,* 75 Vt. 286; *Woolen etc. Co.* v. *Holden,* 73 Vt. 396.

The party dealing with an agent is bound to use reasonable care to measure the scope of his authority. It was at least the plaintiff's duty after receiving notice from Mastin and Lyons that Moore had no authority to purchase goods and that the company did not allow any of its managers to buy locally, to inquire. *Brown* v. *West, Stone & Co.,* 69 Vt. 440; *Mussey* v. *Beecher,* 3 Cush. 511, 28 Am. St. Rep. 645; *Donahue* v. *Windsor Mfg. Co.,* 56 Vt. 374; *Westman* v. *Sheffield,* 56 Vt. 239; *Tier* v. *Lamphire,* 35 Vt. 179; *Bradish* v. *Belknap,* 41 Vt. 13. Whoever deals with an agent of limited authority is bound at his peril to know the extent of that authority. *Sprague* v. *Train,* 34 Vt. 150; *Goodrich* v. *Tracy,* 43 Vt. 314.

*Lawrence & Lawrence,* and *B. L. Stafford* for the plaintiff.

The construction of the written contract was for the court, but whether the purchases in question were of the kind limited

thereby was a question for the jury. *Cunningham* v. *Washburn,* 119 Mass. 224; *Smith* v. *Faulkner,* 78 Mass. 251.

Plaintiff had a right to rely on Moore's representations. *Putnam* v. *French & Moore,* 53 Vt. 402. The principal is bound not only by the instruction given to his agent, but also by the conduct of the agent, so far as known and so far as it ought to be known. *Kingsley* v. *Fitts,* 51 Vt. 414; *Griggs* v. *Selden,* 58 Vt. 561. The principal cannot receive and retain the benefit or avails of the agent's contract and deny the agency. *Ladd* v. *Lord,* 36 Vt. 194.

ROWELL, C. J. This is assumpsit for goods sold and delivered from time to time from July 25, 1905, to January 19, 1906, consisting of a chest of tea and nine barrels of sugar.

The plaintiffs are wholesale grocers, residing and doing business in the city of Rutland. - The defendant is a New York corporation, having its principal office and place of business in the city of New York; and is an importer, and a retail dealer in teas, coffees, and spices, and a wholesale and retail dealer in sugar, having a branch store in the city of Rutland, which it claims was for the sale of its own merchandise only. This branch store was in charge of one Moore as manager, and had been most of the time for 15 or 20 years, who conducted the business thereof under a written contract with the defendant.

The plaintiff claimed to have sold and delivered said goods to Moore as the defendant's agent. But the defendant claimed that under its contract with Moore, he had no authority to buy goods for said store, neither for cash nor on credit, and no authority to buy the goods in question, and none to pledge the defendant's credit therefor.

The plaintiff's evidence tended to show that the goods were ordered by Moore for said branch store, and were delivered there, put in with the other goods in the store, and a large part of them taken out and distributed to customers of the store by the defendant's canvassing agents; that the money received therefor was turned over to Moore at the store, mingled with other money received thereat for goods sold, and by him sent to the defendant in New York; that when the goods were bought, there was a shortage of such articles in the store, and that they were needed to fill orders that had been taken by the canvassing agents, and

temporarily, to supply customers at the store, which shortage was occasioned by delay in transit of goods ordered by Moore of the defendant's New York store, or because he did not seasonably place his orders.

The plaintiff's evidence further tended to show that Moore, as such manager, had from time to time for about sixteen years, bought similar goods of them for said branch store, which were delivered and paid for in the usual course of business, and sold, and the avails thereof accounted for by Moore, as aforesaid.

The written contract between Moore and the defendant provided, among other things, that Moore was to have the general charge and management of the sale of the defendant's merchandise at said branch store, and such other authority as was therein specifically conferred; was to engage such clerks and other employees as the defendant should deem necessary for the due prosecution of its business at said store, appoint their duties, and see to it that they faithfully performed them; was to have the custody of all the defendant's property contained in said store or used in the business thereat, including money, merchandise, checks, presents, horses, wagons, harnesses, and fixtures, and to be responsible to the defendant therefor; and was to sell only that merchandise and property of the company which should be entrusted to him for that purpose.

The contract authorized Moore to incur expenses, and to make disbursements for account of the defendant from the proceeds of sales, for the following purposes: "The salary of himself and the salaries of other employees in said store; commissions of salesmen for selling goods, when paid by him in accordance with written instructions of the company; gas, electric light or power, coal, advertising to secure salesmen; strictly temporary wagon or harness repairs; feed and shoeing of horses used on delivery wagon connected with said store; freight and cartage; express; the hire of horses and wagons for making deliveries of merchandise therefrom; veterinary surgeon's services for emergencies; and other petty small items necessary for the maintenance of the store or the prosecution of the business thereat."

The section of the contract containing this authority closed by saying that the manager should have no authority to subject

the company to any liability except as thereinbefore expressly declared.

The plaintiffs claimed that in the authority thus conferred upon Moore to incur expense, the clause, "and other petty small items necessary for the maintenance of the store or the prosecution of the business thereat," authorized him to buy the goods in question. The defendant claimed the contrary. The court submitted the clause to the jury for its consideration, saying that its construction was plain as far as the court had to say about it, and authorized Moore to make purchases only of petty or small character or amount necessary for the maintenance of the store and the transaction of the business; and that the only question for the jury on that clause was, whether these were petty or small purchases, and whether they were necessary for the maintenance of the store and the transaction of the business, considering its character and extent; that it was for the jury to say whether the clause applied to this particular class of goods, or was intended to apply to any such amounts, and whether they were necessary for the maintenance of the store and the transaction of the business.

This was error. The court should have ruled the question for the defendant as matter of law under the *ejusdem-generis* rule, for the contract discloses nothing to make that rule inapplicable, as it does not appear therefrom that the parties intended that those general words should include, not only things of the same kind as those specifically enumerated, but also goods to replenish the stock, which were things of a very different kind; but quite the contrary appears, for the contract expressly provided that Moore was to make disbursements from the proceeds of sales, and to sell only the merchandise and property that the defendant entrusted to him for that purpose, which we interpret to mean, not the same in kind merely, but the same in identity as well. This construction of that clause is favored by the principle that an authority to buy cannot properly be inferred from an authority to sell, the acts are so distinct in nature, and not dependent upon nor incidents of each other. Story, Agency, 7th Ed., §§ 88, 89.

The contract further provided that expenses and disbursements not named therein should be incurred and made only by express authority from the defendant, or by requisition duly

made and approved according to its rules, and that passing and confirming an account rendered by the manager, showing expenses or disbursements not authorized by the contract, should not be evidence of express authority to make the same in the particular instance specified in the account, nor in any way modify nor affect the contract, nor be deemed to authorize the making of such nor similar disbursements at any time thereafter.

Thus provision was made for enlarging the manager's authority by further express agreement, and for guarding against its enlargement by implication; and a purpose thus to guard pervades the whole contract.

The only other ground of recovery claimed below was, according to the charge, that Moore had so conducted the business by permission of the defendant that he was thereby authorized to make the purchases in question; and the court submitted the case on that ground also. This the defendant says was error, because there was no evidence tending to show an enlargement of Moore's authority in that way. But the case shows otherwise. The contract provided for an inspection by the defendant's representative when required, both of the goods and other property in the manager's hands, and of the books and papers relating to the business; and such inspection was made from time to time during Moore's management. The defendant's evidence showed that in May or June, 1901, when Moore was out of the business for a few months, and one Mastin was in charge, a statement of the plaintiff's then account against the defendant came into the store by mail, and was examined by Mastin, who then informed the plaintiffs that Moore had no authority to purchase goods for the store, nor to pledge the defendant's credit therefor, and that the defendant did not allow Moore, nor any of its agents nor managers, to buy goods locally. The defendant's evidence further showed that at about that time one Lyons, a superintending agent of the defendant's, was at Rutland investigating the business, and that he twice called the plaintiff's attention to the matter by telephone, and notified them that Moore had no authority under his contract to make such purchases. The plaintiff's evidence denied that they received any such notices from Mastin and Lyons, or either of them, or from any of the defendant's agents or officers prior to the sale of the goods in question, or prior to Moore's death in April, 1906; and

showed that they did not know from any source that Moore had no authority to buy goods of them as he did, but believed that he had, and sold accordingly.

The debit side of the account that thus came to the knowledge of Mastin and Lyons commenced, we take it, from a statement of account in the case, on September 23, 1895, and ended on February 16, 1901; and showed sales to the amount of about $650.00, and credits from February 27, 1893, to February 2, 1901, certainly, of about $500. The statement in the case shows that the account continued in the same way to and including the times of the sales of the goods in question, and that the debit side amounted to more than $1,500.

Knowledge that Moore was thus buying goods of the plaintiffs having come home to the defendant—for Lyon's knowledge, certainly, if not Mastin's, was its knowledge—if it did not want to be bound thereby it should have dissented and given notice thereof in a reasonable time, otherwise it would be taken as assenting. 2 Kent Com. *616; *Walsh* v. *Pierce,* 12 Vt. 130, 138; *Cairnes* v. *Bleecker,* 12 Johns. 300; *Insurance Co.* v. *McCain,* 96 U. S. 84. And not only that, but its silence would be evidence of authority to make like purchases in the future and before notice of want of authority; and here like purchases were continued to and including the purchases in question without such notice, unless given as the defendant claimed, which was denied.

It is the prior conduct of the principal that affords ground to infer the continuance of the agency in the particular business. 2 Kent Com. *615. Thus, a man sent his servant to a shopkeeper for goods on credit, and paid afterwards. He sent the same servant a second time with ready money, who received the goods but did not pay for them. It was held that sending him on trust the first time and paying afterwards, was giving him credit so as to charge the master the second time. *Hazard* v. *Tweadwell,* 1 Str. 507. So where an agent was in the habit of drawing bills on his principals, authority was implied from the fact that they had paid them, and therefore they were held bound by a repetition of such acts, there being no proof of notice of a revocation of the authority nor of collusion with the agent. *Hooe* v. *Oxley,* 1 Wash. (Va.) 19, 1 Am. Dec. 425; 2 Kent Com. *615.

It is a general rule that the authority of an agent is enlarged by implication as to third persons if the principal allows him to act as his agent beyond his authority without objection. In that case, the principal is bound by estoppel to those who deal with the agent as such within the apparent scope of his authority, and are not aware of any want of authority in the matter. *Hanover Nat. Bank* v. *American Dock & Trust Co.* 148 N. Y. 612, 51 Am. St. Rep. 721.

*Judgment reversed and cause remanded.*