E. F. WILDER *v.* HINCKLEY FIBRE CO.

May Term, 1923.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 3, 1923.

*Evidence—Res Gestae—Principal and Agent—Exception to Charge Must Be Specific—Authority of General Agent to Bind Principal—Offer of Evidence.*

1.  While agency cannot be proved by declarations of the agent, evidence by the plaintiff in an action for breach of contract that the person with whom he negotiated a contract professed to be acting for the defendant as principal was admissible as part of the *res gestae,* though not binding on the defendant without something further establishing the fact of agency.

2.  In an action of contract, *held* that the plaintiff had a right to testify as to the real party with whom he contracted and how he came to contract with that party.

3.  The judicial admission of defendant's attorney that the person with whom plaintiff negotiated a contract was defendant's general agent, and other undisputed evidence, *held* to justify the trial court's assumption that there was no question of agency to be submitted to the jury.

4. An exception to the charge should be sufficiently specific to apprise the trial court of the error claimed.

5. A principal is bound by the act of his agent which the agent has apparent authority to do, and if the principal claims the act to be in excess of the agent's real authority, the principal must show actual notice thereof to the party with whom the agent deals.

6. Where an offer of evidence included evidence not properly admissible, exclusion of the whole was not error.

ACTION OF CONTRACT. Plea, the general issue. Trial by jury at the October Term, 1922, Essex County, *Willcox*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Affirmed, and remanded as to trustee.*

*Amey & Cameron* for the defendants.

It is the duty of the court to instruct the jury as to all pertinent issues in the case. *Washburn* v. *Tracy*, 2 D. Chip. 128; *Wetherly* v. *Foster*, 5 Vt. 136; *Briggs* v. *Town of Georgia*, 12 Vt. 60; *Vaughan* v. *Porter*, 16 Vt. 266; *Rowell* v. *Town of Vershire*, 62 Vt. 405, 19 Atl. 990, 8 L. R. A. 708.

*C. R. Powell* and *Searles & Graves* for the plaintiff.

WATSON, C. J. The plaintiff seeks to recover the amount claimed by him as still due for cutting, peeling, and delivering at a specified place, according to a contract, made in 1920, between him and the defendant, a foreign corporation doing business in this State, 309 cords of rough pulp wood (already felled) on a certain tract of land owned by defendant, situated in the towns of Brighton and Morgan, at twelve dollars a cord, and for damages by reason of his being prevented by defendant from cutting, peeling, and delivering 350 cords of pulp wood standing on the same tract, under a second contract between them, made in February or March, 1921.

Defendant, in its brief, divides the exceptions on which it relies into three groups: (1) Exceptions to the declaration of agent to third persons in regard to his authority as agent; (2) exception to the refusal of the court to allow the agent to testify

as to limitation of his authority by the principal; and (3) exception to the failure of the court to charge the jury upon the question of agency.

It appeared from evidence introduced by plaintiff that the contracts in question were made by him with one Andrew J. Applebee, the superintendent of the business of the defendant company in this State. Applebee testified to being such superintendent and to making the first contract with the plaintiff; and touching the second contract, he testified that he did not let the plaintiff any particular amount to cut, but that the latter was to cut what he could on a prescribed territory, naming it smaller than that claimed by him. The fact that Applebee was the company's superintendent in the matters of those contracts was judicially admitted by defendant, through its attorney, at the trial of the case: The attorney, Mr. Cameron, said in his opening statement to the jury, "He (plaintiff's attorney who had just been addressing the jury) has also told you that the Hinckley Fibre Company promised to pay Mr. Wilder over the telephone through, as he says, their superintendent, Mr. Applebee. That is true, gentlemen, and we stand ready today to pay what we say is due him * * * I might say further that we claim that there is $400 due the plaintiff and we have offered it and they refused to accept it."

Applebee testified that he was defendant's head man in this State, and there was no one in this State who was over him, nor from whom he took orders; that he let the job to the plaintiff, and let other jobs to other men, all subject to the company's approval. On being asked if they approved the jobs so let to the men named by the witness, he answered that they did not approve the job let to the plaintiff; that the witness wrote them that he had let the job to plaintiff and never heard anything from them; that witness supposed they received his letter; that the plaintiff had cut for the defendant company in the towns of Morgan and Brighton, about 1,700 or 1,800 cords of rough pulp wood, and witness paid all the bills by checks drawn by him for and in the name of the defendant company as its superintendent, it being part of his business to draw those checks; that defendant sold all the wood cut by the plaintiff and took the pay for it. And it seems from the evidence that a very large part of the pulp wood cut by plaintiff and so sold by defendant, was cut under the second contract, and that the only reason why plaintiff

was directed to stop such cutting, was shown by Applebee's testimony that he received word from the defendant "to stop all cutting, they didn't have the money to go on and cut any more."

As to the first group. The plaintiff, testifying in his own behalf, was asked whether Applebee, at the time he let the plaintiff the job, stated for whom he was acting. To the permission of this question exception was saved on the ground that the declaration of Applebee was not admissible on the question of agency. The answer was that Applebee said he was working for the Hinckley Fibre Company. The witness was then asked what Applebee said his position was with that company. Subject to same objection and exception, the witness answered: "He was superintendent, general manager, if that is what you call it." Thereupon defendant's attorney (not in cross-examination) injected the question to the witness, "What did he say, whether he was superintendent or general manager?" To this the witness answered, "I think he has told me both ways, and two or three different ways, but general manager."

[1, 2] The ground specified of the foregoing exceptions is too general to be availing, for although the fact of agency could not be proved by the declarations of the agent, yet the bargains in question were negotiated by the plaintiff with Applebee, and what those bargains were could only be proved by evidence showing what was done and said in their actual negotiations; and if the latter professed to be acting for the defendant as principal, that fact was a part of the *res gestae,* and was admissible, though not binding on the defendant without something further establishing the fact of agency. 3 Wig. on Ev., § 1777; *Roebke* v. *Anderson,* 26 Wis. 311. Indeed, recognizing the distinction here stated, the law makes it the duty of an agent if he would avoid personal liability, to disclose his agency, and if he fails to do this, and deals with a person unaware of his agency, he must answer personally for the debt he contracts. *Baldwin* v. *Leonard,* 39 Vt. 260, 94 A. D. 324; *Johnson* v. *Porter,* 63 Vt. 653, 21 Atl. 608. The plaintiff had a right to testify as to the real party with whom he contracted and how he came to contract with that party. *McNeish* v. *Hulless Oat Co.,* 57 Vt. 316.

[3, 4] As to the third group. Since defendant judicially admitted Applebee's agency as superintendent of its business in this State, and that a certain sum is due plaintiff on contracts made with him by Applebee as such agent, which defendant is

ready to pay, and since, further, the undisputed evidence showed that the first contract was reported by the agent to defendant; and that payments were made to plaintiff by way of checks drawn by Applebee for defendant as its superintendent, and that defendant sold all the wood cut by plaintiff and took pay therefor, the court, in charging the jury, might well assume, as it apparently did, that as to the question of agency there was nothing to be submitted, and therein no error appears. See *Collins* v. *Ames,* (N. J. Err. & App.) 121 Atl. 710. If defendant desired to except to the failure of the court to charge on the question of the agent's authority to make the second contract for cutting, peeling, and delivering all the standing pulp on the tract, as plaintiff's evidence tended to show, its exception for such purpose, to be availing, should have been sufficiently specific to call the attention of the court to that particular contract.

[5, 6]   As to the second group. Defendant offered to show by its witness, superintendent Applebee, that he had absolutely no authority to do anything for the company in the way of letting contracts or procuring wood without the approval of one of the executive officers at the home office of the company. On being asked by the court if he expected to show that plaintiff had any knowledge of any such thing as that, defendant's attorney said he expected to show that was unnecessary. Thereupon the offered evidence was excluded, to which exception was saved. The witness was then asked whether he had any instructions from the company to let the plaintiff a contract to cut any quantity of wood whatever beyond what was actually cut down and hauled in. Objection was made on the ground that, so far as appears, the witness was the company's agent, and could go ahead and let that job to the plaintiff with or without instructions. Defendant's attorney said the thing having special importance is the fact that plaintiff comes in and claims there was a contract to cut 350 cords more, which he did not cut, and that he was turned out of the woods; "and I want to show not only by this witness that he never let him that additional amount to cut, that he had no authority to let him that additional amount to cut, and that his authority all came from the home office and had to be approved by the executive officers of this company." Subject to exception, the offer was excluded. There was no error in either ruling. As to the former, where an agent has apparent authority to do an act, the principal is bound, and if the latter

claims the act was in excess of the agent's real authority he must show actual notice to the party with whom the agent deals. *Smith* v. *Niagara Fire Ins. Co.*, 60 Vt. 682, 15 Atl. 353, 1 L. R. A. 216, 6 A. S. R. 144; *Frost* v. *North British & Mer. Ins. Co.*, 77 Vt. 407, 60 Atl. 803; *State* v. *Howard*, 83 Vt. 6, 74 Atl. 392; *Damon* v. *Hinckley Fibre Co.*, 96 Vt. 528, 121 Atl. 579. As to the latter ruling, the offer was in part similar to the offer just considered and held properly excluded. We need not consider the other parts of the offer, for it being in part bad the exclusion of the whole was not error. *Gregg* v. *Willis*, 71 Vt. 313, 45 Atl. 229.

*Judgment affirmed, and cause remanded to be proceeded with as to the trustee.*