John A. Westlund, Inc. v. O'Bryan Construction Co., Inc.

[187 A.2d 507]

September Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed January 2, 1963

*Edward A. John* for the plaintiff.

*Gannett, Oakes & Weber* for the defendant.

**Barney, J.** The plaintiff corporation was employed as a sub-contractor on an industrial plant construction project in Brattleboro called the Case plant. It is suing the defendant corporation, the general contractor, for money claimed to be due for work done in connection with the erection of the plant. It is the defendant's position that the plaintiff was awarded a verdict below principally because the jury never had fully put before it the evidence or the law dealing with the duty of fidelity required of agents. The agency involved was that of Arthur Mosher, who was construction superintendent for the defendant. Neither party was able to produce him as a witness, either in person or by deposition.

The original contractual arrangement between the parties is not in dispute. The defendant, as general contractor, had bound himself by written agreement to construct the Case plant for $542,000. Because of changes in the plans during construction the final contract price was $656,444.61. The plaintiff, as one of some eighteen sub-contractors, had entered into a written contract to perform certain portions of the construction as spelled out in the terms of the contract for $55,821. There were nine written change orders applicable to plaintiff's part of the job. The defendant in fact paid the plaintiff $103,299.39.

In bringing suit against the defendant, the plaintiff claimed that an additional sum in excess of $149,000 was still owed to it by the defendant. The jury found the sum to be $40,000. The suit of the plaintiff was based, not on the performance of the original subcontract, but upon what it claimed was a modification of that agreement, subsequently entered into by the parties. The plaintiff's version of this transaction may be simply stated. Its evidence, given by John A. Westlund, its president, was that he and Harold Z. O'Bryan, president of the plaintiff corporation, had a conversation in the presence of Arthur Mosher, in which O'Bryan suggested and Westlund agreed that the contract between them be replaced by a cost-plus arrangement. According to Westlund, O'Bryan then directed Mosher to reduce this agreement to writing in the form of a letter to the plaintiff. Such a letter, signed by Mosher on behalf of the defendant, was put in evidence. The reason for this change, as testified to by Westlund, was that if the plaintiff, in its operation, unionized its workers, the defendant would be able to avert having to unionize

its whole force. Westlund stated that when O'Bryan told him that the plaintiff would have to unionize, Westlund objected that his company could not perform in accordance with its subcontract at union wage levels. He claimed that O'Bryan thereupon agreed to the change to cost-plus. This suit seeks to enforce that agreement.

The defendant claims that no modification of the original subcontract was ever in fact authorized. It contends that the letter written by Mosher was, to the knowledge of the plaintiff, the product of the concerted action of Westlund and Mosher and against the interest of the defendant, made without its knowledge.

The defendant produced evidence intended to demonstrate that the claim of an agreed modification was improbable on the face of it and was refuted by the conduct of the plaintiff itself. In this connection the defendant called attention to the fact that while the original contract consisted of a four-page standard form with detailed provisions executed in duplicate on May 12, 1960 by Howard Z. O'Bryan, president of defendant, and John A. Westlund, president of plaintiff, the modification was a one-page, handwritten document prepared and signed by Arthur Mosher alone, just eleven days after the execution of the original contract. The defendant's evidence showed that it was never informed as to the existence of this letter of modification until after suit was brought; that the original was never shown its officers, nor was a copy of any kind furnished them. The defendant was never billed by the plaintiff on a cost-plus basis. Back charges are not applicable to a cost-plus contract, yet in November 1960, Mrs. Westlund, treasurer of the plaintiff, prepared and sent a letter, signed by her husband, giving notice to the defendant that the plaintiff would not be responsible for back charges after November 28, 1960. Pricing change orders were unnecessary under a cost-plus contract, but there were letters from the plaintiff to the defendant in August and November 1960, stating that prices for change orders were being worked up. John Westlund testified that these letters misstated the facts and were written by him to the defendant at Mosher's direction.

The defendant also says that the relationship between Mosher and Westlund was such that Mosher's required loyalty to the defendant was overcome, and he came to act contrary to his employer's

interest. The evidence of this relationship took many forms in the defendant's case, but may be summarized as follows:

Sometime prior to December 1959, Mosher was employed on a job in Keene, N. H., by the Ley Construction Company, as general construction supervisor. In connection with that job he contacted the plaintiff, whose office was in Keene, in connection with subcontracting some work on that job. The plaintiff was successful. Following that, some time in 1959, Mosher and the plaintiff entered a contractual arrangement by which plaintiff was to build a house for Mosher for $29,000. In January 1960, Mosher went to work as construction superintendent for the defendant. At that time Westlund and O'Bryan were not acquainted. However, the plaintiff, shortly thereafter, in March 1960, got a subcontract on a job in Claremont, N. H., for which the defendant was the general contractor. Mosher arranged the hiring. On May 12, 1960, the plaintiff got the subcontract here in question on the Case plant, on which the defendant was the general contractor. Mosher invited the plaintiff to come to defendant's office and discuss the bid. In August or September 1960, the plaintiff got a subcontract on a job in Keene, N. H., on which the defendant was the general contractor. Mosher was construction superintendent for the defendant during this whole period. Mosher's son was employed by the plaintiff during this time. On May 12, 1960, the plaintiff purchased a lot of land for $3,000. On July 7, 1960, the plaintiff conveyed this lot to Arthur Mosher's wife by a deed bearing no revenue stamps. On May 16, 1960, the plaintiff executed an instrument authorizing Mosher to act for it in purchasing materials for the Case plant job and for the construction of Mosher's house. Westlund testified that the lot deeded to Mosher was in the nature of a loan and not a gift.

With this evidence all in the case, Mrs. Westlund took the stand and the defendant cross-examined her in her capacity as treasurer and record keeper for the plaintiff corporation. She was questioned as to whether she had any note, letter, or any evidence of an obligation on the part of Mosher to pay $3,000 to either John Westlund or John A. Westlund, Inc. On objection, the trial court excluded further examination on the matter of the purchase of the land on the grounds it was an attempt to impeach a witness on a collateral matter.

At the bench the defendant stated that it expected Mrs. Westlund would testify that she signed a check of the plaintiff's for $3,000 in

payment for the land, and that the plaintiff had never received from Mosher any note or other evidence of obligation. From this, the defendant argued to the trial court, the jury could find that the land was a $3,000 gift to Mosher. The defendant went on to point out that such a finding would impeach John Westlund's denial of gift, and also tend to support defendant's position that Mosher was acting for Westlund rather than the defendant when he wrote the letter of modification on which plaintiff relies. This, it was contended, goes to the validity of that modification and the heart of the case. However, the ruling of the trial court prohibiting further inquiry stood, and the defendant brings the question here.

In order to recover on its theory of the transaction, it was necessary for the plaintiff to establish the modification of the contract as a fact. This it could do in three ways: First, it could show that the new arrangement was arrived at orally between the parties themselves, so that Mosher's letter merely represented a reduction of the modified contract to writing after agreement; second, it could establish that Mosher's authority as defendant's agent was broad enough to make and bind the defendant to the modification represented by Mosher's letter; or, third, it could demonstrate that no matter what the background of the modification was, and no matter what the limitations of Mosher's authority were, the defendant, with full knowledge of the circumstances, ratified the new agreement.

John A. Westlund described the oral transaction relating to modification of the subcontract in the following testimony:

Q. Can you tell the Court and jury the substance of the talk you had with Mr. O'Bryan?

A. Well, we discussed the work itself, how we wanted to do it. He said, "You have to go union to pay to do this job." I said I could not do it for the price I had now on there. So Mr. O'Bryan says, "Forget about that contract and you go union because I cannot afford to go union." And then I asked, "What can I get to show you decided to do so?" He said, "Arthur, why don't you make up some kind of a letter and give it to John." So sometime later, a day or so later I got the letter we have here now which says . . .

COURT: You have answered the question.

Q. When you told Mr. O'Bryan you could not do the job was that after he told you you had to go union?

A. I didn't tell him I couldn't do the job. Mr. O'Bryan told me I couldn't do the job unless I put union men on.

Q. Did you have some talk with him about the written contract?

A. Yes.

Q. What did you say to him?

A. I said, "I can't go against the written contract because it won't cover union wages." He said, "Forget about it. From now on you are working for me," more or less on a cost plus basis.

Q. Was Mr. Mosher present at the conversation?

A. Yes.

Later, the following testimony was given by Westlund:

Q. I believe you said at this conversation on the site that Mr. O'Bryan said you would be employed I think these are the words you used: "More or less a cost plus basis."

A. Well, that's a cost plus basis as far as money is concerned. I am not much on the language. Cost plus means to me 10% profit and 10% for overhead.

Q. You say he used the words "more or less cost plus basis?"

A. No, he used the words "cost plus basis."

Near the end of his testimony came the following:

Q. You claim that this letter confirms some conversation you had on the plant site with Mr. O'Bryan and Mr. Mosher?

A. Yes.

Q. Do you say that this conversation you had up at the plant site that you discussed all of the items referred to in this letter of May 23?

A. I can't remember whether we discussed all the items but that is the agreement they gave me which I accepted.

Q. This agreement put you on a cost plus basis?

A. Right.

The letter of modification written by Mosher read as follows:

"To John A. Westlund                                May 23, 1960
    Keene, N. H.
            Subject—Case Plant Operations

Pursuant to a conversation with Mr. O'Bryan, yourself and the writer it is agreed that to properly man the job with union help and others according to the most advantage manner due to the work of the General Contractor being other than work not included in the basic contract with you and due to the involvement or difficulty of separating the work from "contract" and "not contract" we will supervise, hire, discharge and direct in your name and use your personnel as best fitted for whatever needs to be done at the Case Plant or where ever else necessary. You will invoice us as you do under your now voided contract for simplicity of payment and when necessary secure funds from the O'Bryan Co. for your payroll. Upon conclusion of all work of a nature involving your forces we will pay you the amount shown in your ledger plus insurance, overhead, profit and plant. It is further agreed that we may inspect your ledger at any time during the time or period of your activities, however, we accept your request that our inspection period shall be limited to seven days after conclusion of any men on your payroll working on our job or jobs. We relinquish the right to question or arbitrate or debate your billing if we do not register same in writing prior to ten days after the last working day of any of your personnel at the Case Plant. Any work done by us is only help or assistance in completing a job, and is not intended as a backcharge because as stated above your contract is voided by our actions and necessity.

                    Very truly yours,
                        O'Bryan Construction Company, Inc.
                        Arthur H. Mosher, Const. Mgr."

Agency enters the case only in connection with this letter. It applies only to the second of the three ways in which the plaintiff can prevail. Nevertheless, since the evidence does not justify recovery as a matter of law, either on the basis of the oral transaction alone, or on the basis of ratification, the jury was free to consider the evidence with respect to all ways of establishing the plaintiff's claim. And, so long as the jury could properly look to the written version of the

modification as a part or all of the transaction amending the subcontract, the relation of both parties to Mosher's agency remained a critical issue.

■ The laws of agency are designed to protect an innocent third party who deals with the representative of another. For this reason, a principal cannot avoid obligations and commitments to such a party made by his agent within the scope of such agent's real or apparent authority. *Damon* v. *Hinckley Fibre Co.*, 96 Vt. 528, 530, 121 Atl. 579. But when a third person induces the agent to act on his behalf instead of the principal's, or against the interest of the principal, the law will not treat him as innocent. To such transactions the principal is given a defense, if there has been no ratification by him with full knowledge of the facts. Every agency is subject to the legal limitation that it cannot be used for the benefit of the agent himself, or of any person other than the principal, in the absence of an agreement that it may be so used. *Arnold* v. *Somers*, 92 Vt. 512, 521, 105 Atl. 260. The fidelity required by law of an agent is so high that a principal can, without any showing of loss or disadvantage, avoid a transaction in which, without his knowledge or consent, his agent undertook to act both for him and for another party to that transaction whose interests were adverse to those of the principal. 3 Am. Jur. 2d. Agency, §§234, 237; see also *Shurtleff* v. *Norcross*, 95 Vt. 420, 425, 115 Atl. 494.

This means that if Mosher had sufficient authority to draft, on his own, the letter of modification and bind the defendant, the plaintiff could not enforce the new contract if the plaintiff had, unknown to the defendant, induced Mosher to use his authority in favor of the plaintiff and against the interest of his principal, the defendant. Likewise, if Mosher's only authority was to transcribe the parties' oral agreement, and the plaintiff induced him, unknown to the defendant, to draft the modification in terms other than those agreed upon, such modification could be repudiated by the defendant. Since no one ought to profit from his own wrong, a third party cannot claim the benefits against a principal of acts by the agent whose fidelity he has perverted. The defendant was entitled to present such a defense.

■ The evidentiary situation is very like that in any case where fraudulent practices are at issue. The evidence necessarily takes a

wide range and objections on the ground of irrelevancy are not favored, so long as that evidence, either by itself or in conjunction with other evidence, contributes something to the establishment of a rational basis for inferring the ultimate fact. *Girard* v. *Vermont Mutual Fire Ins. Co.,* 103 Vt. 330, 335-6, 154 Atl. 666. Since the purposes and arrangements of a defecting agent and his co-actors would, by their very nature, be kept hidden from his principal, large latitude in cross-examination of participants should be allowed. This is particularly true where evidence looking in the direction of possible duplicity has already come into the case.

The witness on the stand at the time of the adverse ruling under review was a principal officer of the plaintiff corporation. Under those circumstances, the right of cross-examination has no dependence on any direct examination and is specially authorized by 12 V.S.A. §1641a. Control of the extent of cross-examination is necessarily in the discretion of the trial court, provided the right to examine on any material issue is not denied. *State Highway Board* v. *Loomis,* 122 Vt. 125, 128, 165 A.2d 572. Not only was this examination directed to a material issue; not only did it involve a witness in the position of a party; not only did it relate to matters peculiarly within the knowledge of this witness; but, with Mosher unavailable to testify, it also, along with examination of Mr. Westlund, represented the only way the defendant could reach the unrecorded dealings between the plaintiff and Mosher. The defendant was denied a substantial right by the court's limitation of the cross-examination, and prejudicial error appears.

The defendant also complains that the court failed to instruct the jury on the consequences of divided loyalty in an agent. This issue was in the case and there was an obligation on the part of the trial court to deal with it in its charge. However, from the standpoint of establishing error in this connection, the defendant's position in this Court is compromised by certain shortcomings in its requests to charge on that issue. In the first place, the defendant was not entitled to instructions that barred recovery by the plaintiff on a showing that Mosher's fidelity had been corrupted, because the court was bound to take into account that the jury might have based a verdict for the plaintiff entirely on the testimony relative to the oral transaction, dis-

regarding what Mosher wrote. Also, an explanation as to what constitutes such duality of agency as to invalidate the agent's acts must be incorporated in requests to charge on that issue to make them proper for use by the trial court. Otherwise, error cannot be predicated on the court's refusal to comply with the requests.

Since the cause must be remanded for a new trial, a determination of the remaining claims of error is unnecessary since they very likely will not again arise in the same form. However, in connection with one matter a comment at this time is appropriate.

When Mrs. Westlund was on the stand, a blackboard was used by the plaintiff in connection with her testimony about the financial operations of the plaintiff. During her examination the figures on the board were altered from time to time to conform with her testimony. She was cross-examined as to the data appearing on the board, and the defendant given opportunity for clarification and correction. The net result was that the figures were supported by the testimony of Mrs. Westlund and by exhibits in the case. The defendant objected to the manner of presentation by blackboard, with accompanying erasures and alterations, as being confusing, misleading and prejudicial. The court in its charge instructed the jury that they should be guided by the evidence in the case and not by any figures on the blackboard. The blackboard was not put in evidence and the figures were erased.

Neither blackboards nor other forms of visual display may be used with uninhibited freedom. *Bone v. General Motors Corporation*, Mo., 322 S.W.2d 916, 71 A.L.R.2d 361; see also *Killary* v. *Lake Champlain Chamber of Commerce*, 123 Vt. 256, 186 A.2d 170. Courts set themselves against the use of these methods to mislead, or where the use is not fairly based on the evidence. But, by and large, this is an area where the trial court's authority over the conduct of the trial gives it large discretion, and its exercise of control will not be disturbed lightly. The complaining party must demonstrate prejudice to procure this Court's intervention. The defendant has not done so here.

*Judgment reversed and cause remanded.*

**Shangraw, J.,** dissenting. I am unable to subscribe to a reversal in this case.

The majority view presupposes that the plaintiff induced Mr. Mosher to use his authority in favor of the plaintiff and against the interest of his principal, the defendant. To a great extent this centers around the letter of May 23, 1960, Pl. Ex. 4, signed by Mr. Mosher on behalf of the defendant, modifying the original contract between the plaintiff and defendant to a cost-plus basis.

It becomes apparent from the record, and the majority opinion, that the jury could have reasonably found that this changeover was brought about either by reason of the verbal conversation between Mr. Westlund and Mr. O'Bryan, or by virtue of the letter of May 23, 1960 signed by Mosher. Either was sufficient to support the cost-plus arrangement. These issues were squarely presented to the jury by the court's charge. In referring to the original contract, the court at one point instructed the jury as follows:

". . . unless that agreement was rescinded, amended or modified subsequently by the parties either orally or in writing it must stand as the only agreement existing between these parties."

On the issue of Mosher's authority to bind the defendant, the court charged:

"If you find by the weight of the evidence that Mr. O'Bryan and Mr. Westlund had no talk in regard to rescinding the written contract and that Mosher was not directed or that he had no authority to act for the defendant and write plaintiff's #4, then you may not consider plaintiff's Exhibit #4 in arriving at your decision. The evidence must establish that Mosher had authority to act for the defendant and write the letter, otherwise it has no binding effect on the defendant."

This is not a one-way street. Assuming that the jury based its verdict on the verbal changeover to a cost-plus basis, which had evidentiary support, then of course the defendant had no occasion to complain. If, on the contrary, the verdict was based entirely upon Mosher's general authority to write the letter of May 23, 1960, this leads us to the course of dealings between the defendant and Mosher, and the latter's general authority upon which Westlund had a right to rely.

As evidence to show that the plaintiff could rely on the letter in question, and Mosher's authority for preparing and signing the same,

Mr. Westlund testified that on a number of occasions O'Bryan stated to him that he backed Mosher ". . . up 100% at all times." Plaintiff also produced two contracts signed by Mosher on behalf of the defendant corporation, which contracts were performed by all parties. One of these contracts was between J. Cole Steel Construction Co. and the defendant, dated July 1, 1960, and the other between the defendant and Theodore Logan & Son, dated September 16, 1960. No doubt the court had in mind the foregoing in its submission of the issue of Mosher's authority to the jury.

In addition to the foregoing Westlund testified that Mosher was present at the time of the changeover to a cost-plus basis, verbally agreed to by the parties, and at the time O'Bryan instructed Mosher to confirm the new arrangement by letter. This was done by letter of May 23, 1960.

It becomes apparent that under the evidence, and the court's charge, the jury was at liberty to: (1) completely disregard the Mosher letter and rely entirely upon the conversation between Westlund and O'Bryan, or; (2) in connection with the conversation find that Mosher had the authority of the defendant to confirm the new agreement by the letter of May 23, 1960, or; (3) that Mosher, independent of any verbal arrangement or instructions from the defendant had the general authority to make the changeover to a cost-plus basis as evidenced by the above letter.

The majority opinion appears to imply that by reason of the transfer by Mr. Westlund to Mosher's wife of the lot of land in Brattleboro some sort of collusion existed between Westlund and Mosher which prompted Mr. Mosher to write the letter of May 23, 1960, to the detriment of the defendant corporation.

The lot of land was conveyed by Westlund to Mrs. Mosher on July 7, 1960. This was after the claimed changeover to a cost-plus basis took place. In referring to the lot in question, on cross-examination of Mr. Westlund, the following was developed by the defendant.

Q. Was this, Mr. Westlund, a gift from you to the Moshers?

A. No

Q. What did you get then in return for conveying to them this land which you had bought with Westlund's money?

A. I was told they were going to return the money when they got the loan to build the house.

Q. They were told?

A. They told me they would give me the money as soon as they got the money from the house they lived in when it was sold.

Q. You were loaning Mr. and Mrs. Mosher money to the tune of $3,000.00 until such time as they sold the house they were living in down in Massachusetts or wherever it was?

A. Yes. They had a piece of land they were interested in here. They couldn't afford to buy it. They asked me to buy it. Later they were going to sell their house and build a house up here. They asked me to buy the land and build a house and when the loan came through they would give me the money.

Q. This loan at least hadn't come through up until the 12th of July when this second deed . . .

A. No, it had not come through.

Following the above cross-examination of Westlund, his wife was inquired of on cross-examination by the defendant as to whether any note, letter, or other evidence of the obligation had been given by Mosher to her husband or the plaintiff corporation for the land in question. On objection, examination of this subject matter was excluded on the basis that this line of inquiry related to a collateral matter.

It is the generally accepted rule that, in the absence of an abuse of the exercise of discretion in limiting the scope and extent of cross-examination, the ruling of the trial court is not revisable here. *State v. Aronson,* 111 Vt. 129, 130, 11 A.2d 214; *Parker v. Hoefer,* 118 Vt. 1, 7, 100 A.2d 434, 38 A.L.R.2d. 1216.

In view of the extent and substance of the testimony of Mr. Westlund relating to the consideration for the lot in question, I am convinced that further cross-examination of Mrs. Westlund on this point would have failed to produce any facts unknown to the jury, and that such testimony would have been merely of a cumulative nature. The limitation of cross-examination of Mrs. Westlund on the point in question was not sufficiently consequential to have affected the verdict. If error exists it was harmless.

On May 16, 1960 the plaintiff signed a letter, Pl. Ex. 3, authorizing Mosher to act for it in purchasing materials for the Case plant job, and for the construction of a house on the Mosher lot. Mr. O'Bryan

acknowledged that he was informed of the contents of this letter shortly after it was written, and made no objection to this arrangement. This letter was witnessed by Harold E. O'Bryan, brother of Howard. Howard testified that his brother Harold was employed by him on the Case plant job and served as his "watch dog." Mosher's authority to act in this matter was at least impliedly ratified by the defendant and it is now bound by its silence. *Keyes* v. *Union Pacific Tea Co.,* 81 Vt. 420, 427, 71 Atl. 201; 2 Am. Jur. Agency, §266, p. 214. It does not appear from the record that Mr. Mosher's authority to purchase materials for Mr. Westlund for the Case plant job, or the house, were in conflict with his duties and loyalty to the defendant. The claim of the defendant that this arrangement was prejudicial to its interest is without evidentiary support.

By reason of the changeover to a cost plus basis as outlined in the Mosher letter to the plaintiff, the defendant was to ". . . supervise, hire, discharge and direct in your name and use your personnel as best fitted for whatever needs to be done at the Case Plant or whatever else necessary." The defendant did hire and discharge personnel pertaining to plaintiff's operations at the Case plant. To a large extent the defendant "took over" employment and management of the plaintiff's personnel. It also included the purchase by Mr. Mosher of materials for the Case plant job, which of course might well have been beneficial to the defendant in the reduction of the overall plant construction costs. While the defendant denies any changeover to a cost-plus basis, it is interesting to note that in this litigation the defendant claims overpayment of $31,000 to the plaintiff and seeks to recover this amount. It seems illogical to assume that the defendant would have permitted such a situation to arise, that is, overpayment to this extent, had the plaintiff been performing under the original contract, and not on a cost-plus basis. This factor may well have been considered by the jury as bearing upon what contract or arrangement was in force.

I concur with the majority in saying that the failure to charge on the dual agency of Mosher, as requested by the defendant, presents no ground for reversal. These requests assumed the existence of facts not binding on the jury, and if given would have disregarded evidence favorable to the plaintiff and its theory of the case.

The defendant filed motions to set aside the verdict, and in addition to matters disposed of in the majority opinion urges that the verdict

of $40,000 was a compromise verdict without supporting evidence. This phase of the case is not discussed in the majority opinion, it being unnecessary by reason of the final entry.

The jury, as evidenced by its verdict, adopted the cost-plus theory as advanced by Westlund. On this basis, and viewing the evidence in the light most favorable to the plaintiff, as we must do, the cost of labor was $123,470.83, less payments to secretaries of $5,910, which were disallowed, resulting in a final labor cost figure of $117,560.83. To this last figure is added costs of materials of $8,975.93, resulting in an actual cost of $126,536.73. Adding 10 percent of this latter figure as profit results in a total of $139,190.43. Payments of $103,299.39 were made by the defendant to the plaintiff, leaving a balance due the plaintiff for construction at the Case plant on a cost-plus-10 percent basis, of $35,801.04. The defendant conceded that it owed the plaintiff for construction at the Keene Clinic the sum of $4,500. When this latter sum is added to $35,801.04 the result is $40,301.04. With the foregoing in mind the verdict was supported by the evidence. On the basis that the verdict resulted by reason of a compromise, the motion was properly denied. No error appears on this point.

In referring to the use of a blackboard by the plaintiff in connection with the testimony of Mrs. Westlund, I agree that the appellant has not pointed out in what manner its use was misleading, or in what respect the figures placed thereon were not supported by the evidence.

The final ground of defendant's motion to set aside the verdict is that the verdict was against the weight of the evidence. From what appears in the record this ground is lacking in support and must be rejected.

It seems apparent that the primary basis on which the majority would reverse is predicated on the supposition that Mr. Mosher acted in behalf of the plaintiff in matters conflicting with the interest of the defendant. More particularly, and to this end, the opinion hinges on the restriction of cross-examination of Mrs. Westlund relating to the consideration, if any, paid for the lot deeded by her husband to Mrs. Mosher. By this attempted cross-examination, the defendant was endeavoring to show that the lot so deeded was a gift and not a sale. This subject was explained in detail by Mr. Westlund on cross-examination. As previously stated it is my opinion that further examination of Mrs. Westlund on this point would have only developed

evidence in support of her husband's testimony, merely cumulative in nature, and of no controlling effect.

The defendant urges that the lot transaction prompted Mosher to write the letter of May 23, 1960 without authority, and that by so doing he acted favorably to the plaintiff and against the interest of the defendant. Its claim of Mosher's disloyalty on this point appears to be pretty well diluted by the fact that the deed in question was dated July 7th, 1960, a number of weeks after the cost-plus agreement was entered into as claimed by the plaintiff and supported by competent evidence. Furthermore, defendant's position entirely disregards plaintiff's evidence to the effect that the changeover was agreed to verbally between plaintiff and the defendant, and that Mosher's letter was authorized by the defendant as a confirmation of the new arrangement.

The jury was left three routes to follow in reaching its decision. Firstly, plaintiff's claim that the cost-plus arrangement was mutually entered into by virtue of the verbal conversation between Westlund and O'Bryan, and supported by the letter of confirmation from Mosher; secondly, the general authority of Mosher to make the change-over as evidenced by the letter; and thirdly, accept the defendant's claim in its denial of each of the foregoing. The jury selected one and, traveling by it, reached its conclusion. It should not be said that the verdict is clearly wrong. We affirm a judgment whenever this can be legally done. *Higgins, Admr.* v. *Metzger,* 101 Vt. 285, 297, 143 Atl. 394. The burden is upon the defendant to show that the claimed error was to its prejudice. *Towle* v. *St. Albans Publishing Co.,* 122 Vt. 134, 139, 165 A.2d 363, citing *Parker* v. *Roberts,* 99 Vt. 219, 225, 131 Atl. 21, 49 A.L.R. 1382. It is my judgment that the record fails to demonstrate any prejudicial error.

I would affirm. Associate Justice Smith joins me in this dissent.