## Joseph P. Blitz v. George B. Breen, d/b/a Real Estate Associates of Vermont, et al.

[321 A.2d 48]

No. 159-73

Present: **Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.**

Opinion Filed June 4, 1974

*Parisi & Broderick,* Castleton, for Plaintiff.

*Natt L. Divoll, Jr., Esq.,* Bellows Falls, for Defendant.

**Barney, C.J.** This action involves a real estate transaction, and the relationship between Joseph P. Blitz as prospective buyer, a real estate agent, George B. Breen and his company, as principal, and one Chester Ringheiser, a salesman for Breen, as agent. The plaintiff brought suit for damages for loss of his bargain when certain Craven property was sold to another buyer. The suit was based on a claim that there was a binding contract to sell the Craven land to the plaintiff. The lower court denied the claim and the matter is here on appeal.

George Breen and his wife are licensed real estate brokers, and Chester Ringheiser is also licensed to sell real estate in Vermont. Sometime in 1971, in response to a general solicitation for listing to area property owners, Mrs. Craven, a New Jersey resident, indicated a willingness to sell some 295 acres in Jamaica, Vermont, owned by her, for $50,000. She was informed by the Breens that they were not interested in buying the property, but would be glad to list it and offer it for sale. As a result, a proposed listing agreement was sent to Mrs. Craven.

At about this time the salesman, Ringheiser, called the plaintiff, with whom he had had prior real estate dealings, to tell him the property was coming on the market. The plaintiff resides in New York City and has been a licensed real estate broker in the state of New York for fifteen to twenty years. He is also a contractor and a civil engineer. Aside from purchases and rentals handled through Ringheiser, the plaintiff has done no business with the Breen agency or any other employee or member of the firm. He inquired of Ringheiser when he could look over the property. This was on June 21, 1971.

The next day, Ringheiser asked Breen about having the plaintiff come up to look at the property. Breen at first thought it would be all right, and Ringheiser called the plaintiff to that effect. Breen later decided it would be best to wait until the listing agreement was received, so on June 23 Ringheiser called the plaintiff back.

The plaintiff informed Ringheiser that he wanted to buy the property and was willing to pay cash or buy on any terms the seller desired. He asked Ringheiser about sending a check and was told that Ringheiser did not know whether or not Breen would accept it. On that day, June 23, neither the plaintiff nor Ringheiser knew of any other party interested in the land.

In the meantime, on June 22, Breen had arranged to contact a John Ricciardi, the ultimate purchaser of the property, to tell him the Craven property was expected to be listed with Breen's agency. Ricciardi lived in Massachusetts and came to Vermont that same day to inspect the property. After inspection, still on June 22, 1971, he left with Breen his check for the deposit in the amount of $5,500 payable to the agency. Breen retained this check in his possession without cashing it until July 20, 1971.

On June 24, 1971, the plaintiff sent a check, payable to Ringheiser, in the amount of $5,500 as a deposit on the Jamaica land. The check was received by Ringheiser on June 28, 1971, and deposited in his personal account. On or about that day, he sent to the plaintiff, then on a trip to the west coast, two printed form deposit receipts and sales agreements, blank as to information relating to seller, buyer, property, location, and terms.

The next day, June 29, Ringheiser tendered a $5,500 personal check and a deposit receipt and sales agreement for the Craven property, designating himself as purchaser, and signed by him. This was in accordance with instructions given him by the plaintiff. Breen refused to accept either the check or the agreement, saying it was improper procedure, and also saying that the plaintiff should make any offers personally on his own behalf.

Also, on June 29, the listing agreement from Mrs. Craven was received. On July 1, Breen obtained a signed deposit receipt and sales agreement from Ricciardi. Ricciardi stated a willingness to pay cash as called for by the listing, or to buy on an installment plan with a mortgage. On July 2, this was discussed in New Jersey with Mrs. Craven and, because of tax advantages, she elected to accept the installment proposal. She then signed the first page of the agreement, already signed by Ricciardi, and a second page setting out the finan-

cial arrangements. This second page was taken back to Massachusetts the same day where it was signed by Ricciardi, completing the contract. The Ricciardi check for $5,500 was not deposited in the broker's clients' fund until July 20, 1971. The final steps in the transaction, the money payments and exchange of deed and mortgage were done on August 5, 1971, with recording in Jamaica the next day.

Also on July 1, 1971, Ringheiser sent to the plaintiff in California a proposed deposit receipt and sales agreement between the plaintiff Blitz and the seller Craven. The agreement proposed an option to the plaintiff to void the contract if there were outstanding cutting rights pertaining to the property. The plaintiff, however, testified he told Ringheiser that he would take the property subject to any existing cutting rights.

The lower court found that Breen had no knowledge of Ringheiser's activities on behalf of the plaintiff until June 28, 1971, and did not at any time authorize them. Mrs. Craven was never informed by Breen or anyone else of the plaintiff's interest in purchasing the property. As an employee of the real estate agency, Ringheiser was never given authority to purchase the Craven property in his own name or as purchaser on behalf of the plaintiff.

Based on these facts, the lower court found that the activities carried out by Ringheiser on behalf of the plaintiff and at his direction were outside the scope of his agency relationship to Breen and his company and not chargeable to them. Since the plaintiff did not submit to the agency a properly executed deposit receipt and sales agreement and a proper and acceptable deposit for the Craven property prior to the July 2 contract with Ricciardi or the July 3 notification to the plaintiff that the property had been sold, the trial court took the view that there was no valid offer for the agency to present to Mrs. Craven. Judgment in favor of the defendants followed.

The plaintiff contests the decision on the basis that Ringheiser's actions are assignable to the defendant Breen and his real estate agency based on the doctrine of apparent authority. This doctrine states that one dealing with an agent may assume his authority to be coextensive with the business

entrusted to his care. *Rozelle* v. *Caledonia Sand & Gravel Co.*, 120 Vt. 246, 249, 138 A.2d 619 (1958) ; *Wilder* v. *Hinckley Fibre Co.*, 97 Vt. 45, 49, 122 A. 428 (1923). The purpose of this is to protect an innocent third party from difficulties in dealings with such an agent whose actual authority is cut down by limitations unknown to the person with whom he is dealing. However, if such limitations are known to the third party, they are binding, absent waiver or compliance with their terms. *Damon* v. *Hinckley Fibre Co.*, 96 Vt. 528, 530, 121 A. 579 (1923).

But the important concern in this doctrine is that it relates to acts that in such a course of dealing would be taken to be acts on behalf of the principal. When the acts of the agent are at the direction of the third party, and contrary to the interests and intentions of his principal, the matter stands differently. *Westlund* v. *O'Bryan Const. Co.*, 123 Vt. 301, 308, 187 A.2d 507 (1963).

In this case, the actions that Ringheiser took that are advanced by the plaintiff as entitling him to claim damages were taken at the direction of, and in the interest of, the plaintiff, and not Breen and his agency. More than that, they represented a serious compromising of both his obligations to his employer and his responsibilities as a real estate salesman.

Under Vermont law, a real estate salesman operates only as the employee of a real estate broker, buying and selling real estate for or in behalf of the broker. 26 V.S.A. § 2211. It is clear from the facts that Ringheiser was acting in behalf of the plaintiff, at the plaintiff's direction, with respect to the Craven property.

A broker taking a listing is the agent of the seller. Ringheiser, although bound as a salesman to be working as the seller's agent, in fact was dealing in behalf of the plaintiff. Furthermore, moneys received by a salesman as escrow agent or temporary custodian of the funds of others in a real estate transaction must be deposited in a trust account (26 V.S.A. § 2214) and must not be commingled with his own funds. 26 V.S.A. § 2295(a)(5). Such acts were not only not authorized of Ringheiser by Breen, but were expressly condemned by him when they came to his attention.

These key activities performed by Ringheiser at the direction of the plaintiff, on which he now relies as proof of a breach of duty towards him, are, under the circumstances, not the proper acts of a real estate salesman on behalf of his broker. Not only do they involve actions improper under statutes and regulations governing real estate salesmen, but insofar as they represent acts at the direction of the plaintiff, they cannot be taken as acts of Ringheiser on behalf of his proper principal, Breen. *Westlund* v. *O'Bryan Const. Co., supra*, 123 Vt. at 308. Moreover, the assumptions that a third party is entitled to make with respect to the authority of a real estate salesman in a normal land transaction do not include improper acts.

The trial court, in its capacity of trier of the facts, examined the evidence relative to the points discussed and concluded that the acts of Ringheiser were not so within his duties and authority as Breen's employee to bind the real estate agency as principal. On the evidence, this conclusion cannot be faulted.

█ The plaintiff does make some claim of a duty on the part of the agency to inform Mrs. Craven of the interest of the plaintiff. We agree with the court that since no proper deposit nor properly completed deposit receipt and sales agreement were put in the hands of the agency prior to the sale to Ricciardi, there was no valid offer required to be communicated to Mrs. Craven.

*Judgment affirmed.*